**CITY OF HOUSTON, Appellant,**

v.

**Bruce A. NORCINI, Appellee.**

**No. 01–09–00426–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 19, 2009.

Bertrand L. Pourteau II, City Attorney, Cora Garcia, The City of Houston Legal, Houston, TX, for Appellant.

J. Marcus Hill, Hill & Hill, Attorneys At Law, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

## OPINION

LAURA CARTER HIGLEY, Justice.

In 2006, the City of Houston ("the City") amended its flood-control ordinances. Under the amendment, new residential construction was severely restricted on property located in a floodway. Appellee, Bruce A. Norcini, sued the City alleging that the 2006 amendment constituted an unconstitutional taking of his property, which was in a floodway. Norcini claimed that the amendment effectively deprived him use of his property and "drastically reduced" its value.

The City filed a plea to the jurisdiction, asserting that the trial court lacked subject-matter jurisdiction because Norcini's

claims were not ripe for adjudication. The trial court denied the City's plea. The City appeals, raising one issue.

We affirm.

## Background

In 2003, Norcini was a principal owner of a company that purchased four lots in Shady Acres, a Houston subdivision. The company subdivided the lots into eight residential lots, creating the Savannah Manor subdivision. After obtaining building permits from the City, Norcini's company built and sold residences on three of the lots. In early 2006, Norcini acquired from his company two of the remaining vacant lots ("the Property"), which he intended to sell "to a builder."

When Norcini acquired it, the Property was not in a floodway. In June 2006, the City adopted new maps prepared by FEMA showing the location of floodways in Houston. The FEMA maps placed Norcini's newly acquired property in a floodway.

Also in 2006, the City amended its Code of Ordinances ("Code") to further restrict development within a floodway, as determined by the FEMA maps. In particular, amended Code section 19.43(a)(2) prohibited the issuance of a permit for "development to be located in any floodway ... if that development provides for ... [n]ew construction, additions to existing structures, or substantial improvement of any structure within the floodway...." HOUSTON, TEX.CODE OF ORDINANCES § 19–43(a)(2) (2006) (since amended).

The ordinance provided an exception for the City Engineer to issue a permit "[f]or those facilities necessary to protect the health, safety and welfare of the general public" or "for the construction of a bridge or the repair or replacement of an existing bridge in a floodway[.]" HOUSTON, TEX.

CODE OF ORDINANCES § 19–43(b),(c) (2006) (since amended). Relatedly, Code section 19–20 required that "[v]ariances shall not be granted for development within any floodway if the development cannot meet the requirements of 19–43(b) of this Code"; that is, development "necessary to protect the health, safety and welfare of the general public." HOUSTON, TEX.CODE OF ORDINANCES § 19–20 (Ord. No. 2006–894) (2006) (since amended); see HOUSTON, TEX.CODE OF ORDINANCES § 19–43(b) (2006) (since amended).

On August 9, 2007, Norcini sued the City alleging that, prior to the 2006 amendment, section 19–43 allowed the City Engineer to issue permits for new construction within a floodway, notwithstanding a restriction on issuing such permits. Norcini alleged that the 2006 amendment prohibited the issuance of building permits for, inter alia, new construction and took away the City Engineer's discretion to issue such permits.

Norcini asserted that the City's 2006 amendment of section 19–43 constituted an unconstitutional taking of his property under the federal and state constitutions. Specifically, Norcini alleged in his petition,

The intentional act of the City of Houston in the enactment of the amendment to Section 19–43 of [the Code] and its refusal to issue building permits as referred to [in the foregoing parts of the original petition] has unlawfully deprived [Norcini] of the use, benefit and enjoyment of his Property and has drastically reduced its value because [Norcini] can neither construct any improvement in or upon the Property nor sell the Property to anyone who desires to construct any improvements in or upon the Property.

Norcini also alleged that he "is not required to exhaust administrative remedies prior to the institution of this lawsuit be-

cause no administrative procedures have been established" by the City "for the issuance of building permits on properties situated in the Floodways...." Norcini claims that "[t]he amendment to Section 19–43, as stated above, simply denies to Plaintiff the ability to secure a building permit without any right to be heard by any administrative agency or body."

The City answered and filed a plea to the jurisdiction alleging that the trial court lacked subject-matter jurisdiction because Norcini's claim was not ripe. In its trial court briefing, the City contended, "The claim that Houston's ordinance effects a regulatory taking as applied to [Norcini's] property is unripe because [Norcini] did not apply for a permit or seek an exception." The City continued, "[Norcini's] allegation depends on the extent, if any, to which he may be deprived of the economic use of this particular piece of property.... [F]or a regulatory takings claim to be ripe there must be a final decision regarding the application of the regulations to the property at issue." In support of its plea, the City offered the affidavit of the City Engineer, who testified that Norcini had not applied for a permit.

In his response, Norcini acknowledged that he had not applied to the City for a building permit before filing suit.[1] Norcini asserted that the 2006 ordinance interfered with "his investment-backed expectations" to either "build a structure on the property" or "sell it to someone who desires to do so." Norcini pointed out that the two permitting exceptions found in the 2006 ordinance did not apply to his intended use of the property and that no other exceptions or variances were provided in the Code. Norcini summarized, "[T]his case is ripe for litigation because any application for a permit, application for a

variance or appeal from the denial of either would be a futile exercise that would only waste the time and the resources of both [Norcini] and [the City]."

Norcini supported his response with his own affidavit.

The trial court denied the City's plea to the jurisdiction. The City filed this interlocutory appeal, seeking reversal of the trial court's denial of its jurisdictional challenge.

## Standard and Scope of Review

▬▬ A plea to the jurisdiction seeks dismissal of a cause based on lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004). Whether a court has subject-matter jurisdiction and whether a plaintiff has affirmatively demonstrated subject-matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). In deciding a plea to the jurisdiction, we may not weigh the merits of the plaintiff's claim, but must consider only the plaintiff's pleadings, construed in favor of the plaintiff, and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). We must take as true all evidence favorable to the a plaintiff and "indulge every reasonable inference and resolve any doubts in [his] favor." *Miranda*, 133 S.W.3d at 228.

## Analysis: Ripeness of Norcini's Takings Claims

### A. Relevant Legal Principles

The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to

---

1. In addition to his response, Norcini's filing included a motion for partial summary judg- ment regarding the ripeness and takings issues.

public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17. Similarly, the Fifth Amendment's Just Compensation Clause provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. The Just Compensation Clause applies to the states by operation of the Fourteenth Amendment. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998).

Takings are classified as either physical or regulatory. *Id.* A physical taking is an unwarranted physical appropriation or invasion of the property. *See id.* A compensable regulatory taking can occur when a governmental agency imposes restrictions that either deny a property owner all economically viable use of his property or unreasonably interferes with the owner's right to use and enjoy the property.[2] *Id.* at 935; *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex.1994).

"Inverse condemnation occurs when (1) a property owner seeks (2) compensation for (3) property taken for public use (4) without process or a proper condemnation proceeding." *Villarreal v. Harris County*, 226 S.W.3d 537, 541 (Tex. App.-Houston [1st Dist.] 2006, no pet.); *see City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971). To state a cause of action for inverse condemnation under the Texas constitution, a plaintiff must allege (1) an intentional governmental act, (2) that resulted in his property being taken, damaged, or destroyed, (3) for public use. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001).

The City asserts that the trial court does not have subject-matter jurisdiction because Norcini's takings claims are not ripe for adjudication. Ripeness is a threshold issue that implicates subject-matter jurisdiction. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). While the jurisdictional issue of standing focuses on who may bring an action, ripeness focuses on when that action may be brought. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000).

Ripeness concerns whether, at the time a lawsuit is brought, the facts have developed sufficiently such that an injury has occurred or is likely to occur, rather than being contingent or remote. *Patterson*, 971 S.W.2d at 442. To establish that a claim is ripe based on an injury that is likely to occur, the plaintiff must demonstrate that the injury is imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical. *Gibson*, 22 S.W.3d at 852. By focusing on the concreteness of injury, the ripeness doctrine allows a court to avoid premature adjudication and issuance of advisory opinions. *Id.*

---

2. In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *TCI West End, Inc. v. City of Dallas*, 274 S.W.3d 913, 917 (Tex.App.-Dallas 2008, no pet.). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* To sustain an as-applied challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.* A regulatory-takings claim may challenge a land-use restriction on its face or as applied to particular property. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). In his petition, Norcini did not allege that the subject 2006 flood-control ordinances always operate unconstitutionally. Thus, we construe Norcini's claim that the 2006 amendment was an unconstitutional regulatory taking as applied to his property, not as a facial challenge. *See TCI West End*, 274 S.W.3d at 917.

## B. Concrete Injury

On appeal, the City contends that Norcini has not alleged that he suffered a "concrete injury."

In his petition, Norcini alleged that he had been deprived of the "use, benefit and enjoyment of his property" because he "can neither construct any improvement in or upon the Property nor sell the Property to anyone who desires to construct any improvements in or upon the property."

Norcini supported his response to the City's jurisdictional challenge with his own affidavit testimony. In the affidavit, Norcini testified that, in 2003, he owned fifty percent of a company that purchased four residential building lots in Shady Acres, a Houston subdivision. Norcini's company subdivided these lots into eight residential building lots. After subdividing the lots, Norcini's company then "secured building permits from the City of Houston and built and sold three residences on three of the lots." In early 2006, Norcini "personally acquired" two of the remaining lots from his company. Norcini testified that he "intend[ed] to sell [the lots] to a builder."

Norcini further averred that he had "made inquiries of the City of Houston as to whether it would issue building permits for the two lots referred to above...." Norcini continued that he was "told that the City of Houston would issue no permits for the construction of any structure of any kind or nature on those lots, stating, as its reason, Chapter 19 of its Code of Ordinances." Norcini testified that "[r]epresentatives of the City of Houston have repeatedly told me that I can secure no permits to construct any improvement on the property...." Norcini also testified that he had placed for sale signs on the Property but "no one has expressed an interest in purchasing those lots and I can use them for no other purpose."

Relying on *Waco Independent School District v. Gibson,* the City alleges,

> In the absence of any concrete plan for development or renovation on the Property, or even any application that would allow the City, in the first instance, to determine that the Property lies within a floodway to which the Ordinance applies, there is at best an abstract, hypothetical and remote dispute, which the ripeness doctrine precludes from being litigated.

*See* 22 S.W.3d at 852 ("A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass."). The City further contends, "Because Norcini still owns his property, and has not alleged that he had a specific plan or even a time line for developing or selling the Property when the 2006 Amendment was enacted, Norcini failed to ripen his claim."[3]

The record does not support the City's contention. We are mindful that, in addition to viewing Norcini's allegations in his favor, we must take as true all evidence favorable to Norcini and "indulge every reasonable inference and resolve any doubts in the [his] favor." *See Miranda,*

---

**3.** In *Bland Independent School District. v. Blue,* the supreme court cautioned that a trial court is not authorized to inquire so far into the substance of the claims that a plaintiff is required to put on his case simply to establish jurisdiction. 34 S.W.3d 547, 554–55 (Tex. 2000). The City's allegations come dangerously close to requiring Norcini to put on his case simply to establish jurisdiction. *See Du-* *bai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76–77 (Tex.2000) (quoting 21 C.J.S. COURTS § 16 at 23 (1990) (" 'The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.' ")).

133 S.W.3d at 228. Viewing the record through this prism, Norcini has alleged a "concrete injury."

Norcini alleged that his property was in a Houston floodway. He also alleged that the 2006 amendments deprived him of the "use, benefit, and enjoyment" of the Property because he could not sell it to anyone who desired "to construct any improvements in or upon the property." Norcini testified in his affidavit that he intended to sell the Property to a builder, indicating that, contrary to the City's contention, Norcini had a definitive plan for the Property, which Norcini alleged was effectively destroyed by the enactment of the 2006 amendment.[4]

The definitive, as opposed to hypothetical or contingent, nature of Norcini's plan for the Property can also be reasonably inferred from Norcini's testimony regarding his historical involvement with developing the Property. Norcini testified that his company purchased and subdivided four lots into eight lots, creating a new subdivision, which included the two lots at issue. Norcini testified that his company built and sold residences on three of these newly created lots. Norcini personally acquired two of the remaining vacant lots in the subdivision from his company. The acquisition occurred only a few months before the City enacted the 2006 amendments, which effectively prohibited the construction of residential improvements on the Property.

Norcini also provided affidavit testimony that he had inquired with the City whether building permits would be issued for the Property, and was informed no permits would be issued. Norcini's testimony further indicated that he had taken affirmative steps to sell the Property.

Considering Norcini's allegations and jurisdictional evidence as we must, we conclude that Norcini has alleged a "concrete injury."[5]

## C. Futility Exception

■ The City also contends that Norcini's claim is not ripe because he did not apply for a building permit, seek a variance, or request any other type of regulatory relief from the ordinance's restrictions. The City relies on the legal principle that a regulatory takings claim is not ripe until there is a final decision by the regulatory agency regarding the application of the regulations to the property at issue. Citing *Mayhew*, the City contends that a determination whether Norcini's property has been taken or impaired cannot be made until the City has denied Norcini's application for a permit or a variance. *See Mayhew*, 964 S.W.2d at 929–30.

Norcini responds that applying for a permit or seeking a variance would have been futile because, under the subject Code provisions, the City or its agencies had no discretion to issue a building permit or variance for the Property. Norcini correctly points out that this Court has held that the futility exception applies to

---

4. We emphasize that our analysis and ultimate holding in this interlocutory appeal are limited to the jurisdictional issue. We intend no comment on the ultimate merits of Norcini's takings claims, including whether Norcini has actually suffered a taking of his property. We determine only whether Norcini's claims are ripe.

5. In *City of Houston v. HS Tejas, Ltd.*, we held that the plaintiff had not alleged a concrete injury arising from the enactment of the same flood-control provisions at issue here. 305 S.W.3d 178, 184–85 (Tex.App.-Houston [1st Dist.] 2009, no. pet. h.). *HS Tejas* is distinguishable from the instant case. The jurisdictional facts developed by Norcini's affidavit testimony were lacking in *HS Tejas*.

the 2006 flood-control provisions at issue here. *See City of Houston v. Noonan*, No. 01–08–01030–CV, 2009 WL 1424608, at *5 (Tex.App.-Houston [1st Dist.] May 21, 2009, no pet.) (mem. op.); *City of Houston v. O'Fiel*, No. 01–08–00242–CV, 2009 WL 214350, at *5 (Tex.App.–Houston [1st Dist.] Jan. 29, 2009, pet. filed) (mem. op.).

As in this case, the plaintiffs in *Noonan* and *O'Fiel* alleged that the 2006 flood-control provisions prohibited them from constructing a residential improvement on property located in a Houston floodway. *Noonan*, 2009 WL 1424608, at *1–2; *O'Fiel*, 2009 WL 214350, at *1–2. We held that the plaintiffs' claims were ripe even though they had not sought or obtained a final decision regarding whether a permit or variance would be issued for the construction of residential improvements on the subject property. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5–6. We recognized that, because no City agency had discretion to issue a permit or a variance under the 2006 flood-control provisions, it would be futile for a landowner to apply for a building permit or to seek a variance to construct a residential improvement on property located within a Houston floodway. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5.

Our holdings in *O'Fiel* and *Noonan* control here. There are no meaningful distinctions between the claims alleged here and those alleged in *Noonan* and *O'Fiel.* Thus, for the reasons stated in *Noonan*

and *O'Fiel*, we conclude that Norcini's takings claims are ripe even though he did not formally apply for a building permit or seek a variance regarding the subject property. *See Noonan*, 2009 WL 1424608, at *5; *O'Fiel*, 2009 WL 214350, at *5.

## D. 2008 Amendment

 Lastly, the City contends that Norcini's claims are "incapable of ripening" because the City Council amended Code section 19–43 in 2008. The 2008 amendment provides the City Engineer with some discretion to issue building permits for development of vacant land within floodways, if certain criteria are satisfied. *See* HOUSTON, TEX.CODE OF ORDINANCES HOUSTON, TEX., ORDINANCE 2008–658 (July 23, 2008) (codified at HOUSTON, TEX.CODE OF ORDINANCES § 19–43 (2009)).

 The City made this same argument in *Noonan.* *See* 2009 WL 1424608, at *6. We explained that, because Noonan's claims under the 2006 amendment were ripe when he filed his suit, the 2008 amendment was irrelevant. *See id.* Similarly, Norcini's claims under the 2006 amendment were ripe when he filed suit in August 2007. Thus, the 2008 amendment is "irrelevant" to the ripening of Norcini's claims arising from the 2006 amendment.[6] *See id.*

## Conclusion

After viewing his allegations favorably, accepting his evidence as true, indulging every reasonable inference from his evi-

---

6. The City also asserts that the 2008 amendment "essentially mooted" Norcini's claims. "A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex.2005). In his brief, Norcini avers that his "damage was caused by the amendment of the ordinance on October 1, 2006, and continued, unabated, until the City of Houston once

again amended its ordinance on September 1, 2008. . . ." He asserts, "The latter amendment may have mitigated future damage to Norcini but could not have rectified the injuries it had already caused." We agree that a live controversy still exists regarding whether Norcini suffered a compensable injury as a result of the enactment of the 2006 amendment, irrespective of the 2008 amendment.

dence, and resolving any doubts in his favor, we conclude that Norcini has alleged a concrete injury. *See Miranda,* 133 S.W.3d at 228. In addition, we conclude that Norcini was not required to apply for a building permit or to seek a variance for his claims to ripen. Given the provisions of the 2006 amendment, seeking a permit or variance would have been futile. *See Noonan,* 2009 WL 1424608, at *5; *O'Fiel,* 2009 WL 214350, at *5. Finally, the 2008 amendment has no relevance to whether Norcini's claims under the 2006 amendment are ripe. *See Noonan,* 2009 WL 1424608, at *6. We conclude that Norcini's claims were ripe when he filed suit. *See id.* We hold that the trial court properly denied the City's jurisdictional challenge.

We overrule the City's sole issue. We affirm the trial court's order denying the City's plea to the jurisdiction.