**Affirmed and Opinion filed June 20, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00339-CV

---

### STEPHEN N. RINER AND KEVINE L. RINER, Appellants

### V.

### THE CITY OF HUNTERS CREEK AND THE PLANNING & ZONING COMMISSION OF THE CITY OF HUNTERS CREEK, SPECIFICALLY, BILL DALTON, NANCY PARKS, TOD DIMITRY, ALLISON GOWER AND DAVID CHILDERS, Appellees

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2011-16758**

---

### O P I N I O N

When the landowners in this case sought to subdivide their property and the local planning and zoning commission disapproved their preliminary plat, the landowners sought declaratory judgment and a writ of mandamus from the district court. In this appeal, they challenge the trial court's dismissal of their suit for want of jurisdiction. We affirm.

# I. FACTUAL AND PROCEDURAL HISTORY

Appellants Stephen N. and Kevine L. Riner own a home on a large lot in the City of Hunters Creek Village. They wish to subdivide the lot into three lots, and to that end, they filed an application for replat with appellee, the City's planning and zoning commission ("the Commission"). The application included a preliminary plat[1] of the proposed subdivision. The Commission disapproved the Riners' application, and at the Riners' request, issued an order certifying the reasons for its decision. The Riners did not appeal the decision to the board of adjustment, but instead filed suit against the Commission in a Harris County district court.[2] According to the Riners, the Commission disapproved the plat primarily because the Commission misconstrued an ordinance specifying the minimum lot size of residential properties and erroneously excluded the area beneath a public-street easement. The Riners asked the trial court to render a declaratory judgment construing the ordinance and stating that all of the Commission's 14 reasons for disapproving the plat are invalid. In the alternative, the Riners asked the trial court to issue a writ of mandamus compelling the Commission to approve the plat or to conditionally approve it subject to modification.

The Commission specially excepted to the Riners' live pleadings on the ground that their allegations failed to establish the trial court's subject-matter jurisdiction over the Riners' claims. The trial court sustained the special exceptions and ordered the Riners to amend their pleadings within fifteen days to

---

[1] The term "plat" includes a replat. TEX. LOC. GOV'T CODE ANN. § 212.001 (West. 2008).

[2] After the Riners amended their pleadings twice, the defendants included the City, the Commission, and three of the Commission's members in their official capacities. Because all of the factual allegations concern actions taken by the Commission, we do not differentiate between the defendants in our discussion.

show that (a) they have the right to judicial review of the Commission's denial of their application for approval of the preliminary plat, and (b) their claims are ripe for review.

The Riners did not further amend their pleadings, and after the Commission moved for entry of judgment, the trial court dismissed the Riners' suit for lack of subject-matter jurisdiction. In a single issue, the Riners challenge the dismissal of their claims.

## II. ANALYSIS

A special exception is a procedural vehicle used to point out defects or insufficiencies in a pleading. *See* TEX. R. CIV. P. 91. The usual procedural vehicle used to challenge the sufficiency of the pleader's jurisdictional allegations or the existence of jurisdictional facts is a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Here, the Commission "specially excepted" to the Riners' second amended petition on the ground that the Riners' allegations failed to establish the trial court's subject-matter jurisdiction over their claims. In substance, then, the Commission's challenge was a plea to the jurisdiction. *See Speer v. Stover*, 685 S.W.2d 22, 23 (Tex. 1985) (per curiam). We therefore disregard the misnomer and treat the challenge as a plea to the jurisdiction. *See id.* (citing TEX. R. CIV. P. 71).

We review a trial court's ruling on a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 226. In our review, we construe the pleadings liberally in favor of the pleader and look to the pleader's intent to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause. *See id*. If the pleadings affirmatively negate the existence of jurisdiction, then the trial court may grant the plea to the jurisdiction without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

## A. The Riners' requests for declaratory judgment are not ripe.

Ripeness is a component of subject-matter jurisdiction. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). As such, it cannot be established by waiver or by estoppel. *See Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 354 (Tex. 2005).[3] To evaluate ripeness, courts consider "whether, *at the time a lawsuit is filed,* the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). Although a claim need not be fully ripened at the time suit is filed, the facts still must be developed sufficiently for the court to determine that an injury has occurred or is likely to occur. *Robinson*, 353 S.W.3d at 755. "[I]f a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed." *Id.* (citing *Perry v. Del Rio*, 66 S.W.3d 239, 251 (Tex. 2001)).

The ripeness requirement applies even if the party is seeking only a declaratory judgment. Under the Uniform Declaratory Judgments Act, a person whose rights are affected by a statute or municipal ordinance "may have determined any question of construction or validity" arising under it,[4] but the Act

---

[3] In the Riners' appellate brief, they state that the Commission "either waived or is estopped to assert any alleged defects in the Riners' Application and Plat." As phrased, this would seem to be an argument about the merits of the Commission's stated reasons for denying the Riners' application rather than an argument that the trial court erred in dismissing the case for lack of subject-matter jurisdiction. In support of this statement, however, the Riners cite to the portions of their pleading concerning ripeness and to an additional section that appears under the heading, "The Zoning Commission [is] estopped to deny the case is ripe because City officials failed to advise and assist the Riners in curing any technical defects in the Riners' application or in the preliminary plat prior to the February 16, 2011 hearing." We therefore construe their reference to estoppel as a jurisdictional argument. The argument nevertheless fails because subject-matter jurisdiction cannot be established by waiver or estoppel.

[4] TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008).

"gives the court no power to pass upon hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968), *superseded by constitutional amendment on other grounds as stated in Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997).

Here, the Riners' pleadings affirmatively negate subject-matter jurisdiction. The gravamen of the Riners' complaint is that the Commission misconstrued an ordinance concerning lot size by failing to include the area under the Riners' proposed public-street easement when calculating the size of the three lots that would be created by their proposed subdivision. They focus on this as the primary reason for the Commission's disapproval of their plat. They admit, however, that the Commission certified 14 reasons for disapproving the Riners' plat. The Riners attached as an exhibit to their pleadings a copy of the Commission's order certifying the 14 reasons for its decision, and in the order, the Commission cited a municipal ordinance in support of each of its stated reasons. The Riners also quoted the full text of each of the Commission's stated reasons in their live pleadings, and asked the trial court to make one or more declarations in connection with each one. As a result, all of the Commission's stated reasons for denying the application are part of the Riners' pleadings for all purposes. *See* TEX. R. CIV. P. 59.

The Riners contend that the Commission's construction of the ordinance concerning lot size is erroneous, and the additional 13 reasons it states as the bases for its decision either do not apply to a preliminary plat or are mere technicalities that do not justify the disapproval of the plat. In the alternative, they assert that they substantially complied with the statutory requirements. The first of these

5

arguments fails because by the ordinances' plain language, they apply to the preliminary plat and to the affected properties. *See Bute v. League City*, 390 S.W.2d 811, 814 (Tex. Civ. App.—Houston 1965, no writ) ("The ordinance which appellants have pleaded in their petition and which they seek to attack must be looked to rather than appellants' allegations . . . ."). Moreover, the Commission is statutorily entitled to insist on compliance—and not simply "substantial compliance"—with "technicalities." *See* TEX. LOC. GOV'T CODE ANN. § 245.002(f) (West 2005) ("This chapter does not prohibit a regulatory agency from requiring compliance with technical requirements relating to the form and content of an application in effect at the time the application was filed . . . .").[5] Because the Commission disapproved a plat that admittedly did not satisfy technical requirements, the question of whether the Commission *also* misconstrued the ordinance concerning lot size cannot be shown to be "essential to the decision of an actual controversy." Two examples are sufficient to illustrate why this is so.

One of the Commission's stated reasons for disapproving the plat was that the plat does not show the locations of proposed easements for drainage and public utilities. By local ordinance, this information is required to be included in a preliminary plat. *See* CITY OF HUNTERS CREEK VILLAGE, TEX., ORDINANCES § 36-24(d)(8) (2011). The Riners admitted in their live pleading that the preliminary plat at issue here does not include this information. They stated only that they "could not propose the location of those easements until after they conduct the engineering and drainage studies that are part of the final plat process." They did not contend that it was impossible for them to conduct the studies before

---

[5] In support of their position that "substantial compliance" is sufficient, the Riners cite *J. C. Evans Construction Co., Inc. v. Travis Central Appraisal District*, 4 S.W.3d 447, 451 (Tex. App.—Austin 1999, no pet.). In that case, the court was construing a statute that actually contained "substantial compliance" language. *See* TEX. TAX CODE ANN. § 42.08 (West 2008 & Supp. 2012). The ordinances and statutes at issue here do not contain such language.

submitting the preliminary plat or offer any other excuse for their noncompliance with the ordinance, and they did not assert that the Commission was prohibited from insisting on compliance with such "technicalities." *See* TEX. LOC. GOV'T CODE ANN. § 245.002(f).[6]

Another of the Commission's stated reasons for disapproving the Riners' plat is that the location of the proposed public-road easement would cause the properties to the north of the Riners to have yard sizes below the minimum specified in the municipal ordinances. *See* CITY OF HUNTERS CREEK VILLAGE, TEX., ORDINANCES § 44-160 (2011). The Riners allege that the properties to the north of them are in a different subdivision, are separated from their property by a fence, and will not have driveway access to their proposed road; however, the Riners do not allege, and the ordinance itself does not show, that the yard-size requirements of Section 44-160 apply only to properties within a particular subdivision, to unfenced yards, or to yards that provide no driveway access to a street. *See Bute*, 390 S.W.2d at 814.

It is unnecessary to address all 14 reasons on which the Commission based its disapproval of the Riners' plat; the examples above are sufficient to illustrate that the Riners cannot show that the Commission's allegedly mistaken interpretation of the lot-size ordinance has caused them a concrete injury, or will soon do so. Because the Riners have not reapplied after remedying the remaining bases for the Commission's decision, have not appealed the Commission's decision, and have requested no variances, any injury from the alleged misinterpretation of the ordinance concerning lot size is hypothetical, because it is

---

[6] The form and content of final plats are governed by Section 36-25, and although that section requires a full set of engineering drawings and specifications showing the exact location, dimensions, and descriptions of all easements and drainage structures, those requirements are in addition to the requirement that the preliminary plat show the proposed easements. *See* CITY OF HUNTERS CREEK VILLAGE, TEX., ORDINANCES § 36-25 (2011).

contingent on (a) the Riners' ability and willingness to eliminate the remaining deficiencies of their plat, (b) the Commission's disapproval of the revised plat, and (c) the board of adjustment's refusal to reverse the Commission's continued disapproval or to grant variances. Because the Riners have not remedied the remaining deficiencies of their plat, the construction of the ordinance governing lot size cannot be shown to be essential at this time to the decision of an actual controversy concerning their alleged right to subdivide their property into three lots. *Cf. Firemen's Ins. Co. of Newark, N.J.*, at 333. Their requests for declaratory judgment accordingly are not ripe.

## B. The futility doctrine does not apply.

The Riners assert that their request for a declaratory judgment construing the ordinance's provisions concerning lot size is sufficiently ripe for decision because the Commission would disapprove their plat on this basis regardless of any other stated reason for its decision. According to the Riners, it therefore would be futile for them to reapply.[7] In support of this argument, the Riners rely on *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex. 1998). *Mayhew*, however, supports the conclusion that the Riners' claims are not ripe.

In *Mayhew*, the Texas Supreme Court considered a regulatory takings claim, and stated that such a claim ordinarily is not ripe until there has been a final decision applying the regulations to the property. *Id.* at 929. The court stressed that "[a] 'final decision' usually requires both a rejected development plan and the denial of a variance from the controlling regulations." *Id.* The court further stated that the requirement that a "variance" be denied is applied flexibly to serve the purpose of "giving the governmental unit an opportunity to grant different forms of relief or make policy decisions which might abate" the alleged injury. *Id.* at 930

---

[7] They do not contend that it would be futile for them to request any variances.

(quoting *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir. 1990)). The Mayhews submitted only one development application and did not apply for a variance, and the court stated that this normally would mean that their claims were not ripe. *Id.* at 931. Under the "unique circumstances" of that case, however, the court determined that it would have been futile for the Mayhews to apply for a variance.

The "unique circumstances" demonstrating futility in *Mayhew* are very different from the facts present here. In *Mayhew*, a zoning ordinance in the Town of Sunnyvale limited residential development to one unit per acre. The Mayhews originally sought to build between 3,650 and 5,025 residential units on their land, which would result in a density of more than three units per acre. After meeting with the Mayhews, the Town amended its zoning ordinance to allow higher-density development upon council approval. The Mayhews spent over a year negotiating with the Town; expended over $500,000 in connection with their application; and presented the project to the Town's planning staff, the planning and zoning committee, and the Town council. The Town employed a planning and engineering firm to review the Mayhews' plan, and the firm recommended approval, but after considering the plan for four months, the planning and zoning commission rejected it. The Town council then appointed a negotiating committee which tentatively agreed to a development of 3,600 units; nevertheless, the Town council rejected this plan as well. A further meeting was scheduled for the council to reconsider the plan, but the Town canceled the meeting. Significantly, the sole reason identified for the Town's denial of the Mayhews' development application was its conclusion that "a less dense use of the property was preferable." *Id.* at 925–26.

Unlike the governmental units in *Mayhew*, the Commission in this case did

not base its disapproval on a single reason. The Commission instead certified 14 reasons for its decision. The Riners could have isolated the "essential question" of lot size by remedying the remaining deficiencies and reapplying to the Commission, but they did not do so. The Commission's decision also was subject to review by a different governmental unit known as the board of adjustment, which is authorized to hear appeals of the Commission's decisions and to grant variances from the zoning regulations. *See* CITY OF HUNTERS CREEK VILLAGE, TEX., ORDINANCES § 44-92 (2008). The Riners chose not to pursue this avenue, either. Instead, the Riners filed suit in district court 29 days after the Commission disapproved the Riners' plat, and just ten days after the Commission certified the reasons for its decision.

As support for their argument that it would be futile for them to reapply to the Commission, the Riners cite two letters from the Commission's attorney. In the first of these letters, the attorney referred to his earlier representation that the Commission would consider an application "for approval of a final plat without requiring you first to obtain approval of a preliminary plat." He stated that, "If, as you assert, you can prepare and submit a plat that meets all of the Commission's objections, other than the lot size issue, then it would greatly simplify the current dispute if you would submit an application for a final plat." This statement indicates that the Riners represented that they could modify the plat to eliminate 13 of the 14 reasons for the Commission's disapproval of the plat and isolate for review the question of whether the land beneath a public-street easement is included in the measurement of a lot's size. It does not show, however, that the Riners' representation was correct or that the Riners actually did correct the Commission's other stated reasons for its disapproval of their plat. The attorney further stated that "another option would be for you to recognize that your

10

contemplated subdivision of the existing residential lot . . . into three residential lots simply cannot be done given the configuration of the lot and the City's zoning and subdivision regulations." This broad statement is not directed simply to the size of the lot but encompasses its configuration; thus, it pertains also to the effect of the proposed public road on adjacent lots and on the neighborhood as a whole. The record does not show that the Riners modified the plat to remedy these matters or even that it was possible to do so. Finally, the attorney stated in a second letter that the Riners had asked the Commission to place an item on the agenda allowing them to "propose a resolution to the pending controversy," but that the Riners did not explain the proposal or the action they wished the Commission to take. The attorney also reminded the Riners that the Commission already had disapproved their preliminary plat. The Riners do not claim that the Commission is authorized to reconsider the same preliminary plat; as previously mentioned, the City's ordinances provide that appeals and requests for variances are directed to the board of adjustment, not to the Commission. Neither letter—each of which was written months after this suit was filed—addresses the question of whether an appeal to the board of adjustment would have been successful or whether any variances would have been granted if the Riners had directed their requests to the correct governmental entity.

Because the Riners have failed to pursue the available administrative remedies, there is no basis on which to conclude that it would have been futile for them to do so. *Cf. City of Paris v. Abbott*, 360 S.W.3d 567, 579–83 (Tex. App.—Texarkana 2011, pet. denied) (holding that the futility doctrine did not apply to make landowner's takings claim ripe where his preliminary plat was rejected and he filed suit without applying for rezoning or asking the board of adjustment for a variance from the zoning regulations). In these circumstances, the trial court

correctly concluded that the declarations the Riners seek could be obtained only in an advisory opinion that the trial court has no jurisdiction to render.

## C. The Riners' allegations affirmatively negate the trial court's jurisdiction over its petition for a writ of mandamus.

In the alternative to their request for declaratory judgment, the Riners contend that their vested property right was adversely affected by the Commission's wrongful disapproval of their preliminary plat, and that they are entitled to a writ of mandamus compelling the Commission to approve the plat or to conditionally approve it subject to modification. We agree with the trial court, however, that it lacked subject-matter jurisdiction over the request.

Where a planning and zoning commission's interpretation of the law "deprives a citizen of an unquestionable legal right and there is no other adequate remedy, the court having power to issue mandamus may review the matter." *Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 895 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting *City of Corpus Christi v. Unitarian Church of Corpus Christi*, 436 S.W.2d 923, 927 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.)). The pertinent questions then are (1) does the law specify what facts must come into existence for an applicant to have an unquestionable legal right to approval or conditional approval of a preliminary plat such that the Commission is without discretion to disapprove it, and (2) did the Riners allege that these facts had come into existence? If the answer to either of these questions is no, then the Riners failed to plead facts showing that the trial court has jurisdiction over their request for a writ of mandamus.

The law does specify what facts must exist for an applicant to have an unquestionable legal right to approval of a preliminary plat, but in their pleadings, the Riners effectively admit that these facts have not yet come into existence. By

ordinance, the Commission is required to "check the preliminary plat as to its conformity with the master plan, major street plan, land use plan, zoning districts," and Chapters 36 and 44 of the City's Code of Ordinances. *See* CITY OF HUNTERS CREEK VILLAGE, TEX., ORDINANCES § 36-24(e)(1). It then must either approve the plat, disapprove it, or "conditionally approve it with modifications." *Id.* § 36-24(e)(2). It must approve a plat "that satisfies all applicable regulations." TEX. LOC. GOV'T CODE ANN. § 212.005 (West 2005). By implication, the Commission could either disapprove a plat that does not satisfy all applicable regulations or conditionally approve it with modifications.

As previously discussed, however, the Riners effectively admit in their pleadings that their preliminary plat does not comply with all of the applicable requirements. Among other things, the Riners admit in their pleadings that they have not yet shown the location of proposed easements—even though, as previously mentioned, a provision in chapter 36 of the City's ordinances requires this information to be included in a preliminary plat. Thus, the Riners' pleadings affirmatively negate subject-matter jurisdiction over their request for a writ of mandamus compelling the Commission to approve their preliminary plat.

### III. CONCLUSION

Because the trial court lacks subject-matter jurisdiction over the Riners' claims, we overrule the sole issue presented for our review and affirm the trial court's judgment dismissing the suit.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Christopher, Jamison, and McCally.

13