ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/24/2025 3:52 PM
CHRISTOPHER A. PRINE
CLERK

## No. 15-24-00114-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/24/2025 3:52:39 PM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals for the
Fifteenth District of Texas

Cecile E. Young, in her official capacity as Executive Commissioner of Texas Health & Human Services Commission, Molina Healthcare of Texas, Inc., and Aetna Better Health of Texas, Inc.,

*Appellants,*

v.

Cook Children's Health Plan, Texas Children's Health Plan, Superior HealthPlan, Inc., and Wellpoint Insurance Company,

*Appellees.*

Appeal from the 455th Judicial District Court, Travis County, Texas, Trial Court Cause No. D-1-GN-24-003839, Hon. Laurie Eiserloh, Presiding

### Appellee Superior HealthPlan, Inc.'s Reply in Support of Motion for Temporary Relief Under Rule 29.3

Karen D. Walker
*Admitted Pro Hac Vice*
karen.walker@hklaw.com
Tiffany Roddenberry
*Admitted Pro Hac Vice*
tiffany.roddenberry@hklaw.com

Holland & Knight LLP
315 S. Calhoun Street, Suite 600
Tallahassee, Florida 32301
(850) 425-5612 (telephone)
(850) 224-8832 (facsimile)

Richard B. Phillips, Jr.
Texas Bar No. 24032833
rich.phillips@hklaw.com

Holland & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 15500
Dallas, Texas 75201
(214) 964-9500 (telephone)
(214) 964-9501 (facsimile)

**Counsel for Appellee Superior HealthPlan, Inc.**

# TABLE OF CONTENTS

Page

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   1. This Court has jurisdiction to grant temporary relief
      pending appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A. This Court has power under Rule 29.3 to protect
        Appellees' rights pending appeal. . . . . . . . . . . . . . . . . 4

     B. The Court also has inherent authority to grant
        temporary orders. . . . . . . . . . . . . . . . . . . . . . . . . 7

   2. The trial court correctly concluded that Appellees have
      a probable right to relief. . . . . . . . . . . . . . . . . . . . . . 9

     A. Appellees' claims are ripe for adjudication. . . . . . . . . . . . 9

     B. Appellees were not required to exhaust administrative
        remedies before bringing their ultra vires claims. . . . . . . . . . 16

     C. The Commissioner mischaracterizes the relief
        Appellees seek.. . . . . . . . . . . . . . . . . . . . . . . . . . 19

     D. The trial court correctly determined that the
        Commissioner has acted and proposes to act ultra
        vires. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

(1)  Section 2155.144 does not confer unlimited discretion
and requires documentation of the relevant factors
considered in making contract awards. . . . . . . . . . . . . . . .  24

(2)  The Commissioner was required to apply statutory
preferences and cannot argue they were discretionary. . . . . .  26

(a)  The Court should reject the Commissioner's shotgun
arguments for why the preferences do not apply, afford
her unbounded discretion, or are waived. . . . . . . . . . .  26

(b)  Appellees have a probable right to relief on their claims
that the Commissioner has failed to apply or will fail to
apply statutory preferences.  . . . . . . . . . . . . . . . . .  32

(3)  Appellees have a probable right to relief on their claims
that HHSC wrongfully disclosed proposals. . . . . . . . . . . .  36

(4)  The trial court appropriately found that Appellees have a
probable right to relief on their claims that the
Commissioner will act ultra vires in failing to certify the
proposals in accordance with section 533.0035 and in
awarding "mandatory" CHIP contracts in violation of
section 536.052(d). . . . . . . . . . . . . . . . . . . . . . . . .  38

3.  The equities weigh heavily in favor of temporary relief. . . . . . . . . . .  40

Conclusion and Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

Page

Cases

*Abbott v. Doe*,
691 S.W.3d 55 (Tex. App.—Austin 2024, no pet.) . . . . . . . . . . . . . . . 10

*Abbott v. Doe*,
No. 03-22-00126-CV, 2022 WL 837956 (Tex. App.—Austin
Mar. 21, 2022, no pet.) . . . . . . . . . . . . . . . . 23

*Associated Gen. Contractors of Texas, Inc. v. City of El Paso*,
879 S.W.2d 318 (Tex. App.—El Paso 1994, no writ) . . . . . . . . . . . . . 5, 6

*City of Anson v. Harper*,
216 S.W.3d 384 (Tex. App.—Eastland 2006,
no. pet.) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Austin v. Utility Assocs., Inc.*,
517 S.W.3d 300 (Tex. App.—Austin 2017,
pet. denied) . . . . . . . . . . . . . . . . . . . . . 21, 22

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) . . . . . . . . . . . . . . . . . . . 22

*Duarte v. Disanti*,
292 S.W.3d 733 (Tex. App.—Dallas 2009,
no pet.). . . . . . . . . . . . . . . . . . . . . . . . . 29

*E&L Constr. Grp., LLC v. United States*,
159 Fed. Cl. 115 (2022). . . . . . . . . . . . . . . . . . . . 27

*Eichelberger v. Eichelberger*,
582 S.W.2d 395 (Tex. 1979) . . . . . . . . . . . . . . . . . . . 8

*Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*,
977 F.2d 1472 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . 26

*Etan Indus., Inc. v. Lehmann*,
359 S.W.3d 620 (Tex. 2011) . . . . . . . . . . . . . . . . . . . 9

*Frank v. Liberty Ins. Corp.*,
   255 S.W.3d 314 (Tex. App.—Austin 2008,
   pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 32

*Hensley v. State Comm'n on Jud. Conduct*,
   692 S.W.3d 184 (Tex. 2024). . . . . . . . . . . . . . . . . . . . . . 18

*Holt & Co. v. Wheeler County*,
   235 S.W. 226 (Tex. App.—Amarillo 1921,
   writ dism'd w.o.j.) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Houston Belt & Terminal Ry. Co. v. City of Houston*,
   487 S.W.3d 154 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Geomet Recycling LLC*,
   578 S.W.3d 82 (Tex. 2019) (orig. proceeding). . . . . . . . . . . . . 7

*In re State*,
   711 S.W.3d 641 (Tex. 2024) (orig. proceeding) . . . . . . . . . . . . 41

*In re Stetson Renewables Holdings, LLC*,
   658 S.W.3d 292 (Tex. 2022) (orig. proceeding). . . . . . . . . . . 20, 21

*In re Texas Educ. Agency*,
   619 S.W.3d 679 (Tex. 2021) (orig. proceeding) . . . . . . . . . . 7, 8, 23

*Marble Falls Indep. Sch. Dist. v. Scott*,
   275 S.W.3d 558 (Tex. App.—Austin 2008,
   pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Matzen v. McLane*,
   659 S.W.3d 381 (Tex. 2021) . . . . . . . . . . . . . . . . . . . . . 22

*McGarry v. Houston Firefighters' Relief & Ret. Fund*,
   680 S.W.3d 14 (Tex. App.—Houston [1st Dist.] 2023,
   pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Page

*Morath v. Kingsville Indep. Sch. Dist.*,
710 S.W.3d 918 (Tex. App.—15th Dist. 2025,
no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Omniplex World Servs. Corp. v. United States*,
105 Fed. Cl. 706 (2012) . . . . . . . . . . . . . . . . . . . . . . 27

*Phillips v. McNeill*,
635 S.W.3d 620 (Tex. 2021). . . . . . . . . . . . . . . . . . . 22

*Riner v. City of Hunters Creek*,
403 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 2013,
no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*S.O. v. Univ. of Tex.*,
No. 03-16-00726-CV, 2017 WL 2628072 (Tex. App.—Austin
June 15, 2017, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 9

*State v. City of San Marcos*,
714 S.W.3d 224 (Tex. App.—15th Dist. 2025,
pet. filed) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

*Sw. Elec. Power Co. v. Lynch*,
595 S.W.3d 678 (Tex. 2020). . . . . . . . . . . . . . . 9, 15, 16

*Sw. Life Ins. Co. v. Montemayor*,
24 S.W.3d 581 (Tex. App.—Austin 2000,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Tex. Educ. Agency v. A+ Tex. Teachers*,
No. 03-23-00318-CV, 2023 WL 4981604 (Tex. App.—Austin
Aug. 4, 2023, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Tex. Health & Human Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*,
No. 03-21-00136-CV, 2021 WL 2371356 (Tex. App.—Austin
June 9, 2021, no pet.). . . . . . . . . . . . . . . . . . . . 7, 43, 44

*Tex. State Bd. of Exam'rs in Optometry v. Lane*,
349 S.W.2d 763 (Tex. App.—Fort Worth 1961,
no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Texas Educ. Agency v. Houston Indep. Sch. Dist.*,
609 S.W.3d 569 (Tex. App.—Austin 2020,
no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Texas Highway Comm'n v. El Paso Bldg. & Constr. Trades Council*,
234 S.W.2d 857 (Tex. 1950) . . . . . . . . . . . . . . . . . . 5

*Transp. Co. of Tex. v. Robertson Transports, Inc.*,
261 S.W.2d 549 (Tex. 1953) . . . . . . . . . . . . . . . . . 43

*VAS Realty, LLC v. United States*,
26 F.4th 945 (Fed. Cir. 2022) . . . . . . . . . . . . . . . . 27

*Wilson v. Cmty. Health Choice Texas, Inc.*,
607 S.W.3d 843 (Tex. App.—Austin 2020,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATUTES AND REGULATIONS

1 T.A.C. § 391.101 . . . . . . . . . . . . . . . . . . . . . . . . . . 36

1 T.A.C. § 391.209(3)(A) . . . . . . . . . . . . . . . . . . . . . 36

TEX. GOV'T CODE § 311.016(2) . . . . . . . . . . . . . . . . 24

TEX. GOV'T CODE § 311.026 . . . . . . . . . . . . . . . . . 29

TEX. GOV'T CODE § 533.002(a)(1) . . . . . . . . . . . . . 32

TEX. GOV'T CODE § 533.003 . . . . . . . . . . . . . . *passim*

TEX. GOV'T CODE § 533.003(a) . . . . . . . . . . . . . *passim*

TEX. GOV'T CODE § 533.004 . . . . . . . . . . . . . . . *passim*

TEX. GOV'T CODE § 533.0035(a) . . . . . . . . . . . . . . 38

Page

Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ § 536.052(d). . . . . . . . . . . . . . . . . . . . . . . *passim*

Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ § 2155.144 . . . . . . . . . . . . . . . . . . . 24, 25, 28, 29

Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ § 2155.144(c) . . . . . . . . . . . . . . . . . . . . 24

Tᴇx. Hᴇᴀʟᴛʜ & Sᴀꜰᴇᴛʏ Cᴏᴅᴇ § 62.155(c)(1) . . . . . . . . . . . . . 31, 39

Tᴇxᴀs Hᴇᴀʟᴛʜ & Sᴀꜰᴇᴛʏ Cᴏᴅᴇ § 62.155(a). . . . . . . . . . . . . . . 39

Tᴇxᴀs Hᴇᴀʟᴛʜ & Sᴀꜰᴇᴛʏ Cᴏᴅᴇ § 62.155(c). . . . . . . . . . . . . . . 31

**Rᴜʟᴇ**

Tᴇx. R. Aᴘᴘ. P. 29.3 . . . . . . . . . . . . . . . . . . . *passim*

**Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs**

Merriam-Webster Online Dictionary . . . . . . . . . . . . . . . . . . . . . . 30, 31

## INTRODUCTION

The trial court (after hearing live testimony for three and a half days) concluded that Appellees have brought viable claims that the Executive Commissioner of the Texas Health and Human Services Commission has acted and will act ultra vires in connection with the procurement at issue in this appeal. The trial court also found that Appellees have a likelihood of success on the merits of those ultra vires claims and enjoined the Commissioner from taking action to execute the proposed contracts. This Court should issue temporary orders to keep that injunction in place pending until this appeal is resolved.

The Commissioner's and Molina Healthcare of Texas, Inc.'s[1] responses to Appellees' motions for temporary relief essentially argue that the Commissioner should have unreviewable discretion to award these contracts as she sees fit. But the Legislature has established multiple requirements that the Commissioner must follow in awarding these contracts. Appellees' suits are the proper way to invoke the courts' jurisdiction to ensure that the Commissioner follows the law. And temporary relief from this Court is necessary to protect this Court's jurisdiction and Appellees'

---

[1] Molina filed a response despite its representation that it did not intend to do so. (Superior Mot. at 35.) And two days after responses to the motions were due, putative appellant Aetna Better Health of Texas, Inc. purported to adopt by reference the Commissioner's and Molina's responses.

rights to effective judicial review. The Court should reject the Commissioner's and Molina's efforts to nullify those rights.

Molina (but not the Commissioner) questions this Court's authority to grant temporary relief at all. This argument hinges on a misapprehension of Appellees' rights and this Court's power. Because Appellees have viable ultra vires claims, they have rights that can (and should) be protected by temporary relief under Rule 29.3. Molina's arguments are based on its flawed assertion that the Commissioner has unfettered discretion in the procurement process. Also, this Court has inherent power to enjoin execution of the proposed contracts because any other result would raise significant constitutional issues.

Despite ample evidence of imminent harm to Appellees, the Commissioner and Molina argue that Appellees' claims are not yet ripe. They also both argue that Appellees were required to exhaust their administrative remedies before bringing ultra vires claims. These arguments misconstrue the nature and purpose of Appellees' ultra vires claims. Texas courts have repeatedly recognized that ultra vires claims are not subject to the exhaustion requirement. Where the official's actions are ultra vires, there is no purpose in requiring the plaintiff to wait until the ultra vires process ends before seeking judicial relief. Thus, Appellees' claims are ripe and properly before the Court.

The Commissioner next argues that Appellees are not likely to succeed on the merits of their ultra vires claims by asserting that the statutory mandates are merely guidelines and that she has essentially unreviewable discretion in deciding how to implement them. (HHSC Resp. at 20–21.) But that argument cannot survive an examination of the statutes at issue and the trial court's findings. The trial court concluded that Appellees established that the Commissioner has acted and will act ultra vires in at least seven different ways. (Superior Mot. at 13–19.) The Commissioner's arguments in her response do not show that the trial court abused its discretion in concluding that Appellees are likely to succeed on the merits of these claims.

Finally, the Commissioner argues that the equities weigh in favor of allowing her to continue on a course of action the trial court found to be likely ultra vires. (HHSC Resp. at 41.) The Commissioner argues that the State has an interest in enforcing its laws. True enough. But that interest weighs against the Commissioner here because the purpose of ultra vires suits is to rein in officials who are acting outside their authority. Because Appellees are likely to succeed on their ultra vires claims, the interest of enforcing the law weighs in favor of a temporary order from this Court to prevent ultra vires actions. The Commissioner does not (and cannot)

dispute the evidence of the irreparable harm that Superior faces from the Commissioner's ultra vires acts. The Commissioner also blithely brushes aside the impact on the more than 1.5 million Texans who will be forced to change health plans because of the Commissioner's conduct. This Court should grant temporary relief to enjoin the Commissioner's ultra vires actions, to protect Appellees and the public from irreparable harm, and to preserve the status quo pending the appeal's resolution.

## ARGUMENT

**1.      This Court has jurisdiction to grant temporary relief pending appeal.**

Molina (but not the Commissioner) asserts that this Court lacks jurisdiction to grant the temporary relief requested by Appellees. (Molina Resp. at 12.) But as explained in Superior's motion, this Court has the power to grant the requested relief under either Rule 29.3 or the Court's inherent authority. (Superior Mot. at 23–25.) Molina's attempts to avoid these sources of jurisdiction are unavailing.

**A.      This Court has power under Rule 29.3 to protect Appellees' rights pending appeal.**

Molina argues that Rule 29.3 cannot apply by urging that Appellees have no rights that need to be preserved because (according to Molina) Appellees have no right to challenge the Commissioner's administration of the procurement. (Molina Resp. at 16–21.) This is *not* an argument that the Commissioner made in the trial court or in this Court, and for good reason. The only Texas cases Molina cites for

this argument are from 1950 and from 1921, both addressing materially different statutory schemes. (*Id.* at 17 & n. 18.) In *Texas Highway Commission v. El Paso Building & Construction Trades Council*, the statute at issue required the Highway Commission to ascertain the prevailing per diem wage rate for the work to be performed under any contract and to include that rate in the contract. 234 S.W.2d 857, 859 (Tex. 1950). But nothing in the statute provided any standards by which the prevailing rate should be determined and instead defined the term to mean the rate determined by the public body awarding the contract. *Id.* And that determination was expressly made final by the statute. *Id.* Thus, it is unsurprising that the Supreme Court held that the Highway Commission had absolute discretion in determining the prevailing rate. *Id.*

A more recent case about setting prevailing wage rates makes clear that the decision turned on the absolute discretion granted by the statute. The statute was amended in 1993 to prescribe two methods by which the prevailing wage rate was required to be determined. *See Associated Gen. Contractors of Texas, Inc. v. City of El Paso*, 879 S.W.2d 318, 319 (Tex. App.—El Paso 1994, no writ). When Associated General Contractors of Texas sued the City of El Paso for failing to comply with the amended statute, the city argued that the courts had no jurisdiction over the claim,

relying on *Texas Highway Commission*. 879 S.W.2d at 319. The appellate court rejected that argument because of the amendment to the statute. *Id.* at 320. The court held that courts had jurisdiction to determine whether the city followed the amended statute's requirements. *Id.*

In a footnote, Molina also cites a case from 1921, in which the applicable statute gave the county commissioners court the absolute power to reject any bid. *Holt & Co. v. Wheeler County*, 235 S.W. 226, 228 (Tex. App.—Amarillo 1921, writ dism'd w.o.j.). Again, because the statute conferred absolute discretion, the court lacked jurisdiction over claims about the bidding process. *Id.*

Here, in contrast, as discussed in Superior's motion (and in Part D of this reply), the governing statutes do *not* give the Commissioner absolute discretion. Instead, the applicable statutes establish standards and requirements that the Commissioner must follow in determining and awarding the contracts at issue. Molina's cases about absolute discretion thus do not apply here.

Molina also makes no effort to address recent Texas Supreme Court authority about courts' power to address ultra vires actions by state officials. In *Houston Belt & Terminal Railway Co. v. City of Houston*, the Supreme Court clarified that an ultra vires suit can be maintained when the plaintiff alleges that an official exercised "limited discretion without reference to or in conflict with the constraints of the law

authorizing the official to act." 487 S.W.3d 154, 163 (Tex. 2016). Ultra vires suits are absolutely barred only when the official is exercising "absolute discretion—free decision-making without any constraints." *Id.* Because the Commissioner does not have absolute discretion, Appellees have viable ultra vires claims and therefore have rights that should be protected by temporary orders under Rule 29.3.

### B.     The Court also has inherent authority to grant temporary orders.

Molina's arguments about this Court's inherent authority fare no better. (Molina Resp. at 21.) Texas courts have recognized that appellate courts have the inherent authority "to preserve a party's right to judicial review of acts that it alleges are unlawful and will cause it irreparable harm." *Tex. Health & Human Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*, No. 03-21-00136-CV, 2021 WL 2371356, at *5 (Tex. App.—Austin June 9, 2021, no pet.). Molina tries to avoid this case as simply applying Rule 29.3 (Molina Resp. at 22 n.27), but the court expressly exercised its inherent authority. *Id.* The point is that even without Rule 29.3, an appellate court has the inherent power to grant temporary relief to preserve the right to appellate review and prevent irreparable harm. *Id.*

That power is necessary because if a party has no recourse to preserve its rights pending appeal, that would raise "serious constitutional questions." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 89 (Tex. 2019) (orig. proceeding); *see also In re*

*Texas Educ. Agency*, 619 S.W.3d 679, 690 n.59 (Tex. 2021) (orig. proceeding) (identifying constitutional issues that would arise if appellate courts did not have inherent authority to issue temporary orders to prevent irreparable harm). The Austin Court of Appeals has also recognized that "where the appellee alleges irreparable harm from ultra vires action that it seeks to preclude from becoming final, to effectively perform our judicial function and to preserve the separation of powers, we must exercise our inherent authority and use Rule 29.3" to issue temporary orders to prevent that irreparable harm. *Texas Educ. Agency v. Houston Indep. Sch. Dist.*, 609 S.W.3d 569, 578 (Tex. App.—Austin 2020, no pet.). The court noted that this inherent power comes not from any statute or rule but from the separation-of-powers doctrine and the court's need to effectively exercise its functions and to protect its "dignity, independence, and integrity." *Id.* at 577 (quoting *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979)). The Court should reject Molina's invitation to create the very constitutional problems the Supreme Court identified and avoided in *In re Texas Education Agency*. This Court has the inherent authority to issue temporary orders to ensure effective judicial review of the Commissioner's ultra vires acts.

**2.    The trial court correctly concluded that Appellees have a probable right to relief.**

**A.    Appellees' claims are ripe for adjudication.**

Both the Commissioner and Molina argue that the Appellees' claims are not ripe because their administrative appeals remain pending before the Commissioner. (HHSC Resp. at 12; Molina Resp. at 24.) The ripeness arguments hinge on the contention that there can be no cognizable injury to Appellees until after the Commissioner decides their pending appeals from the denial of their bid protests. (HHSC Resp. at 12; Molina Resp. at 24.) But the Commissioner and Molina misconstrue the law and the testimony at the temporary-injunction hearing. Appellees face an imminent injury that is sufficiently ripe for adjudication.

A dispute is ripe if "the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020) (internal citations omitted). "A claimant is not required to show that an injury has already occurred, provided the injury is imminent or sufficiently likely." *S.O. v. Univ. of Tex.*, No. 03-16-00726-CV, 2017 WL 2628072, at *2 (Tex. App.—Austin June 15, 2017, no pet.). A declaratory-judgment claim is ripe when there is a live controversy, harm will occur if it is not resolved, and the declaration sought will "actually resolve the controversy." *Lynch*, 595 S.W.3d at 685; *see also Etan Indus., Inc. v. Lehmann,* 359 S.W.3d 620, 624 (Tex.

2011) ("[The UDJA] is intended as a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed … ."). And when a party asserts that a governmental actor is acting ultra vires, the party need not wait for a final agency determination before challenging the ultra vires action and seeking declaratory relief. *See Abbott v. Doe*, 691 S.W.3d 55, 76 (Tex. App.—Austin 2024, no pet.).

To argue that Appellees' claims are not ripe, the Commissioner and Molina selectively quote from the hearing transcript about the administrative appeals' status. (HHSC Resp. at 12–13; Molina Resp. at 25–26.) The Commissioner contends that "whether the Commissioner will proceed with the results from HHSC's procurement scoring or alter them in some way is far from certain." (HHSC Resp. at 13.) This statement cannot be squared with the Commissioner's testimony. For example, she was asked:

> Q: But you've decided that you're not going to redo something or fix something; you're just going to sign the contracts?
>
> A: On these—on this procurement, I felt like we did—what we did was correct, so no.

(5RR:180.) In the context of earlier questions, the Commissioner's statement "so no" refers to whether she intends to order a new procurement. An earlier question asked about her option to "just start over." (*Id.*) And this answer makes clear that

the Commissioner believes that there is no reason to order a new procurement. Other testimony makes clear that the Commissioner intends to proceed with awarding the contracts as stated in the notice of intent to award. She testified that she believes that the procurement properly gave preference to historical quality ratings. (6RR:135.) The Commissioner also testified that she tried to find a way to give awards to the children's health plans, but she "couldn't come up with a principled way to do it." (6RR:141.) Finally, she testified that at the time of the hearing, HHSC's position was that it was "not going to do anything different" other than move forward with the intended contract awards. (6RR:168.) This testimony shows that any statements about needing to resolve the administrative appeals are hollow references to technical procedures. The Commissioner's arguments in her response against the merits of Appellees' arguments also reveal her views about the administrative appeals' merits. (HHSC Resp. at 20–41.)

Molina hypothesizes that it is *possible* that the Commissioner *might* find in Appellees' favor in the administrative appeals and *could* order a new procurement. (Molina Resp. at 26–27.) But based on the evidence at the hearing and the Commissioner's arguments in this Court, there is no reasonable doubt about the administrative appeals' outcome: the Commissioner fully intends to move forward with awarding the contracts identified in the notice of intent to award.

The Commissioner and Molina also disregard evidence of harm to Appellees. The Commissioner testified that she "could execute the contracts *immediately* after denying the appeals." (6RR:147 (emphasis added).) That is, absent injunctive relief now, there would likely be no way for Appellees to stop the contracts' execution after the Commissioner denies the administrative appeals. The trial court also heard uncontroverted evidence of the imminent harm that Superior is already suffering and will suffer from the contracts' execution. Superior's then CEO testified that "the harm would be immediate" following the contracts' execution. (7RR:113.) He described that once the contracts are executed, Superior will start losing employees which will affect Superior's ability to perform under its current contract and result in reputational damage. (7RR:115.) He also explained that as soon as the contracts are signed, Superior would suffer damage to its investment in its value-based contracted network. (7RR:116.) He also testified that if the contracts are signed, it would impact Superior's ability to negotiate with providers in its network, as those providers would begin focusing on other health plans. (*Id.*) Similarly, plan participants would start looking at other plans. (7RR:117.) He noted that even though the contracts have not been signed, Superior is already "hearing reports of providers

informing members that Superior has lost and is exiting service areas and encouraging them to switch plans." (*Id.*) He testified that this activity would intensify if the contracts are signed. (*Id.*)

In sum, the evidence presented to the trial court establishes a live controversy about the legality of the Commissioner's actions. And the harm from that conduct is imminent. Thus, Appellees' claims are ripe for determination.

The cases on which the Commissioner and Molina rely for their ripeness arguments are distinguishable. The Commissioner cites *Riner v. City of Hunters Creek*, 403 S.W.3d 919, 923–24 (Tex. App.—Houston [14th Dist.] 2013, no pet.), to support her argument that claims are not ripe while the administrative appeals are pending. But the facts in *Riner* are significantly different from those here. In *Riner*, the plaintiffs complained that a city planning and zoning commission misconstrued an ordinance concerning lot size and that this was the primary reason the commission disapproved their plat. *Id.* at 921. But the commission's order identified 14 reasons for disapproving the plat. *Id.* The court of appeals found that the plaintiffs' claims were not ripe because they could not show that the alleged mistaken interpretation of the lot-size ordinance had caused them injury or would soon do so. *Id.* at 924. The court noted that the alleged injury was hypothetical because it was contingent on (a) the plaintiffs' ability and willingness to eliminate their plat's other deficiencies, (b)

the commission's disapproval of a revised plat, and (c) the board of adjustment's refusal to reverse the commission's continued disapproval or grant variances. *Id.* The court emphasized that although the commission had given 14 reasons for disapproving the plat, the plaintiffs' declaratory-judgment claim focused on only one (the lot-size ordinance) and merely assumed that the other bases would be resolved. *Id.* Thus, the court could not find that the lot-size ordinance "has caused [plaintiffs] a concrete injury, or will soon do so." *Id.*

Here, in contrast, the Commissioner's ultra vires conduct is *the* cause of the harm Appellees face. The administrative appeals' pendency does not affect this analysis. The Commissioner continues to take the position that she and HHSC complied with all applicable laws and unless a court tells her otherwise, the Commissioner stands poised to deny the appeals and execute the contracts immediately thereafter. Thus, the alleged harm in *Riner* was materially more contingent and attenuated than the harm at issue here.

The Commissioner also cites *Marble Falls Independent School District v. Scott*, 275 S.W.3d 558, 567 (Tex. App.—Austin 2008, pet. denied). But that case addresses exhaustion of administrative remedies, not ripeness. And as discussed in Part 2.B, Appellees were not required to exhaust administrative remedies before seeking a declaration that the Commissioner is acting ultra vires. *Marble Falls* is also inapposite

because the dispute was subject to the Administrative Procedure Act and statutory prerequisites to filing suit, neither which apply here. *See id.* at 567–68.

Molina also cites *City of Anson v. Harper*, 216 S.W.3d 384, 395 (Tex. App.—Eastland 2006, no. pet.), for the proposition that injury that depends on uncertain administrative action is not ripe. (Molina Resp. at 27.) That case addressed a challenge to a proposed landfill, where the landfill permit applications were still pending and thus the landfill's construction and operation was a mere possibility. 216 S.W.3d at 388. The court cited two Fifth Circuit cases finding that controversies over proposed landfills were not ripe where the landfills' regulatory approvals were still pending. *Id.* at 390. But the court found that because the city had already done some dirt work relating to the proposed landfill that had damaged plaintiffs, the trial court did have potential jurisdiction to resolve claims based on events which had already taken place. *Id.* Here, Appellees have alleged that the Commissioner has already engaged in *ultra vires* action (which has caused injury to Superior) and will continue to engage in *ultra vires* action unless stopped by the court (which will result in additional injury to Superior). Thus, this case does not support Molina's ripeness argument.

The facts here are more analogous to the facts in *Lynch*, which involved a dispute about the rights granted under a blanket easement. 595 S.W.3d at 684. The defendant argued that the plaintiffs' claim was not ripe because their concerns

stemmed from the easement's possible future. *Id.* The Supreme Court acknowledged this but noted that the claims were "inextricably tethered to a present disagreement" about the easement's scope. *Id.* The Court also noted that declaratory-judgment actions "are often brought with an eye to future harm." *Id.* at 685. The Court held that the "present disagreement" (though it was narrower than the larger dispute) was sufficient to create a ripe dispute about the easement's scope. *Id.* Similarly, there is a "present disagreement" here about the Commissioner's interpretation of the statutes governing the STAR & CHIP and STAR Kids procurements, and Appellees have shown that they are likely to suffer harm if that controversy is not resolved. That harm is neither contingent nor remote. The dispute is therefore ripe for adjudication.

### B. Appellees were not required to exhaust administrative remedies before bringing their ultra vires claims.

Relatedly, the Commissioner and Molina also argue that this Court lacks jurisdiction because Appellees should have exhausted their administrative remedies before filing their declaratory-judgment case. (HHSC Resp. at 15–16; Molina Resp. at 27–31.) But administrative exhaustion is not required when the plaintiff asserts a valid ultra vires claim. *See, e.g.*, *McGarry v. Houston Firefighters' Relief & Ret. Fund*, 680 S.W.3d 14, 34–35 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). Both the

Commissioner and Molina concede that Texas courts have recognized that at least some ultra vires claims are exempt from the administrative-exhaustion requirement. (HHSC Resp. at 15–16; Molina Resp. at 30–31.) But they argue that the ultra vires exception applies only to claims where the administrative body wholly lacks authority to decide the issue at all. (*Id.*) That argument is premised on cases that predate the Texas Supreme Court's clarification about what constitutes an ultra vires claim.

As discussed in Part 1.A., in 2016, the Texas Supreme Court decided *Houston Belt & Terminal Railway Co.* and clarified what constitutes an ultra vires claim. 487 S.W.3d at 163. In that case, the City of Houston argued that ultra vires claims are cognizable only when the official had no discretion whatsoever. *Id.* at 161. That is, according to the City, if the official had *any* discretion, no ultra vires claim could ever be brought. *Id.* The Supreme Court rejected that argument. *Id.* at 163. The Court instead held that ultra vires claims are cognizable to address "an officer's exercise of judgment or limited discretion without reference to or in conflict with the constraints of the law authorizing the official to act." *Id.* The Court reasoned that the purpose of ultra vires claims is not to "attempt to exert control over the state" but to "attempt to reassert the control of the state." *Id.* at 164. Thus, the issue is not whether

the official has discretion or does not have discretion, but whether the plaintiff adequately alleges that the official acted outside whatever authority the legislature has granted. *Id.*

The Commissioner cites *Hensley v. State Commission on Judicial Conduct,* 692 S.W.3d 184, 194 (Tex. 2024), for the proposition that "when an available administrative remedy 'may moot the claim … the claim is barred.'" (HHSC Resp. at 15.) But in that case the Supreme Court concluded that the plaintiff did *not* have to exhaust her administrative remedies because "exhaustion would be a pointless waste of time and resources." 692 S.W.3d at 194. That holding is fully consistent with the ultra vires exception's application. When the plaintiff has a viable claim that the official is acting outside the authority granted by the legislature, requiring the plaintiff to complete the administrative process before making those claims serves no purpose.

The Texas cases that Molina cites to support its exhaustion argument all predate *Houston Belt & Terminal.* (Molina Resp. at 30–31.) Nor does Molina identify any reason that the ultra vires exception to the exhaustion requirement should be limited to claims that the official lacked any authority whatsoever where the claim is that the official acted beyond the scope of, or contrary to, the applicable legislative authority. As discussed above, the Supreme Court has explained that a plaintiff states a claim

for ultra vires action if the plaintiff alleges that the official is acting outside whatever discretion the legislature has granted. *Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 163. The ultra vires claim's purpose is to reassert the state's control over a wayward official. *Id.* at 164. And the ultra vires exception to the exhaustion requirement recognizes that there is no reason to make a plaintiff wait through an administrative process to assert that the official conducting that process is acting without authority. That purpose is fully satisfied here. There is no reason to force Appellees to complete the administrative process before bringing their claims that the Commissioner has acted outside her authority.

### C.     The Commissioner mischaracterizes the relief Appellees seek.

The Commissioner next argues that Appellees are not entitled to ask a court "to compel the Commissioner to redo the procurement process." (HHSC Resp. at 16.) But this argument misstates the relief Appellees seek. The Commissioner does not cite to any portion of the record where Appellees have sought an order compelling the Commissioner to redo the procurement. (*Id.*) That is because there is no such pleading. Instead, Superior seeks (1) declarations that the Commissioner is required to comply with the statutes governing the procurement and that the Commissioner has failed and will continue to fail to comply with such statutes if the

proposed contract awards are finalized and (2) an injunction stopping the Commissioner from proceeding with the proposed contract awards. (CR:3550–56.) What happens after that is up to the Commissioner.

The Austin Court of Appeals has also previously recognized that a claim for an injunction to stop the Commissioner from executing a contract that violates the procurement statutes is a valid ultra vires claim. *Wilson v. Community Health Choice Texas, Inc.*, 607 S.W.3d 843, 855 (Tex. App.—Austin 2020, pet. denied). Thus, Superior's similar claim is also cognizable. That is, by seeking to stop the Commissioner from violating the law, the claim seeks prospective relief. And injunctive relief to stop improper conduct is a recognized and proper remedy for an ultra vires claim.

Further, the cases the Commissioner cites for this strawman argument are readily distinguishable. The Commissioner first cites *In re Stetson Renewables Holdings, LLC*, 658 S.W.3d 292, 297 (Tex. 2022) (orig. proceeding) for the proposition that absent a legislatively crafted remedy, there is no remedy for the Commissioner's ultra vires conduct. (HHSC Resp. at 16–17.) But *Stetson* does not support that argument. A taxpayer sought mandamus relief ordering the Comptroller to process its application to participate in a tax incentive program. 658 S.W.3d at 293. The Supreme Court held that because the legislature had expressly provided that the

program ended on a date certain, a court could not order the Comptroller to process an application after that date. *Id.* at 299. Nothing in the opinion addresses the prospective injunctive relief that Appellees seek here.

The Commissioner next cites *Morath v. Kingsville Independent School District*, 710 S.W.3d 918, 925 (Tex. App.—15th Dist. 2025, no pet.), for the proposition that "the lack of a legislatively mandated judicial remedy is fatal to [Appellees'] claims." (HHSC Resp. at 17.) Again, however, the case does not support that proposition. The issue was whether a school district was entitled to an order compelling the Commissioner of Education to cancel school district ratings rather than issuing them retroactively because they were not timely under the statute. 710 S.W.3d at 921–22. This Court held that issuing the ratings retroactively was not an ultra vires act. *Id.* at 927. This case does not address what the remedy would have been if the commissioner was acting ultra vires.

Finally, the Commissioner cites *City of Austin v. Utility Associates, Inc.*, 517 S.W.3d 300, 312–13 (Tex. App.—Austin 2017, pet. denied), to argue that Appellees seek retrospective relief rather than prospective relief. (HHSC Resp. at 18.) But that case establishes that Appellees are seeking prospective relief. In *Utility Associates*, the plaintiff sought injunctive relief to stop enforcement of an existing contract the

city had previously executed. 517 S.W.3d at 312–13. The court held that this was improper retrospective relief. *Id.* Of course, here Appellees seek injunctive relief to stop the Commissioner from awarding and signing the contracts. That is prospective relief.

More fundamentally, the Commissioner's argument cannot be squared with the many cases recognizing that injunctive relief is proper to stop ultra vires actions. *See, e.g.*, *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) ("Texas law recognizes 'ultra vires' claims seeking prospective injunctive relief against individual government officials in their official capacities."); *Phillips v. McNeill*, 635 S.W.3d 620, 627–28 (Tex. 2021) (noting that the doctrine of ultra vires suits against government officials traces its roots "to courts' issuance of writs of habeas corpus, mandamus, and injunction against government officials to check acts in excess of lawful authority"); *Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 160 n.4 (noting that a successful plaintiff on an ultra vires claim is entitled to injunctive relief); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373, 376 (Tex. 2009) (same). In short, when the relief Appellees seek is correctly understood, there can be no question that the relief is judicially cognizable.

**D.** **The trial court correctly determined that the Commissioner has acted and proposes to act ultra vires.**

The Commissioner also seeks to avoid relief maintaining the status quo pending her appeal by asserting that all Appellees' claims lack merit. (HHSC Resp. at 20–41.) This Court need not and should not resolve the merits at this early stage given this case's procedural posture. *See, e.g.*, *In re Tex. Educ. Agency*, 619 S.W.3d 679 (Tex. 2021) (orig. proceeding) (making no comment on the merits of school district's claims in affirming temporary orders entered under Rule 29.3); *Abbott v. Doe*, No. 03-22-00126-CV, 2022 WL 837956, at *2 (Tex. App.—Austin Mar. 21, 2022, no pet.) ("Therefore, without regard to the merits of the issues on appeal, which are not yet briefed to this Court, we exercise our discretion under Rule 29.3 to reinstate the injunction as issued by the district court on March 11, 2022."); *Tex. Educ. Agency v. A+ Tex. Teachers*, No. 03-23-00318-CV, 2023 WL 4981604, at *3 (Tex. App.—Austin Aug. 4, 2023, no pet.) (issuing temporary order reinstating part of temporary injunction "without commenting on the merits of any party's claims or defenses"). In any event, Appellees have demonstrated a probable right to relief on the merits warranting Rule 29.3 relief and maintaining the trial court's temporary injunction.

### (1) Section 2155.144 does not confer unlimited discretion and requires documentation of the relevant factors considered in making contract awards.

In her opposition, the Commissioner suggests for the first time that her conduct was entirely proper because Texas Government Code section 2155.144 grants her broad and purportedly limitless discretion to award managed care contracts based on her determination of "best value." (HHSC Resp. at 22–25.)[2]

To begin with, although the Commissioner is generally required to use procurement methods that provide best value under section 2155.144, she also remains bound to comply with specific statutory requirements when awarding managed care contracts, including those set forth in sections 533.003, 533.004, and 536.052(d). *See Wilson*, 607 S.W.3d at 846–47, 854. Otherwise, such statutory requirements would be meaningless. The Commissioner's arguments also ignore that section 2155.144 mandates documentation of any factors that were considered relevant. *See* TEX. GOV'T CODE § 2155.144(c) ("The agency shall document that it considered all relevant factors under Subsection (d) in making the acquisition." (emphasis added)). The term "shall" is mandatory and leaves no room for discretion. *See* TEX. GOV'T

---

[2]     As noted in Superior's motion (Superior Mot. at 2 n.3), portions of the Texas Government Code were repealed and recodified effective April 1, 2025, affecting the numbering of several statutes at issue. For consistency of reference, Superior will continue to refer to the statutes as they existed at the time of the trial court's order on appeal.

CODE § 311.016(2) ("'Shall' imposes a duty"); *see also, e.g.*, *Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 324 (Tex. App.—Austin 2008, pet. denied) (noting that the word "shall" in a statute is generally construed as creating a "mandatory duty.").

For instance, the Commissioner cannot and does not dispute that HHSC deemed past performance a relevant factor in this procurement. (5RR:225–26.) Once HHSC deemed it a relevant factor under section 2155.144(d), consideration of that factor was required to be specifically documented under subsection (c) but was not. (5RR:107–08, 168–69, 225–26.) Despite the stray comment the Commissioner cites as somehow establishing HHSC documented consideration of past performance, witness James Ramirez agreed that one would not be able to find where HHSC documented past performance outside of generically referring to the entire procurement file. (5RR:227–28 (admitting past performance was not "an express and independent consideration"); *see also* 5RR:110–11 (Kay Molina conceded that "the words 'past performance' are [not] going to show up anywhere" in any evaluations of respondents' proposals.).)

Despite the Commissioner's arguments to the contrary, section 2155.144 imposed a nondiscretionary duty upon the Commissioner to document all relevant factors considered under the statute in making the contract awards, including past performance, which she did not do. This is perfectly suited to an ultra vires claim.

### (2)   The Commissioner was required to apply statutory preferences and cannot argue they were discretionary.

The Commissioner next argues that there is no specified manner by which she must apply the statutory preferences required in managed care procurements, see Tex. Gov't Code §§ 533.003, 533.004, and 536.052(d)), and that Appellees merely argue the Commissioner and HHSC did not exercise discretion in the way Appellees wanted. (See HHSC Resp. at 25–35.) The Commissioner is wrong for several reasons.

### (a)   The Court should reject the Commissioner's shotgun arguments for why the preferences do not apply, afford her unbounded discretion, or are waived.

The Commissioner offers a series of disparate arguments contending that the statutory preferences at issue are inapplicable, confer discretion, or have been waived. (HHSC Resp. at 25–28.) These arguments cannot withstand scrutiny.

The Commissioner first questions whether Appellees have standing to challenge her failure to apply the statutory preferences, arguing that Appellees were required to show that the failure to apply the statutory preferences caused them to be passed over in the procurement process. (HHSC Resp. at 25–26.) The single case the Commissioner cites is a federal bid protest case. *See Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*, 977 F.2d 1472, 1483–84 (D.C. Cir. 1992). But this is not a bid protest; it is an action asserting claims of ultra vires action. In any case, the same

federal case law confirms that "prejudice" necessary to sustain a protest includes a showing that "there was a substantial chance [the plaintiff] would have received the contract award but for th[e] error." *E&L Constr. Grp., LLC v. United States*, 159 Fed. Cl. 115, 119 (2022). A "substantial chance" includes the ability to compete if a rebid occurs, particularly where the challenger is an incumbent like Superior. *VAS Realty, LLC v. United States*, 26 F.4th 945, 949–50 (Fed. Cir. 2022) (the "substantial chance" test includes a substantial chance of receiving the award on rebid); *Omniplex World Servs. Corp. v. United States*, 105 Fed. Cl. 706, 713–14 (2012) (recognizing that incumbency and being in the competitive range are relevant to establishing a "substantial chance" of being awarded a contract). Thus, the federal case law cited by the Commissioner does not support her argument that Appellees lack standing.

Equally unavailing is the Commissioner's suggestion that Appellees should have protested how HHSC would employ the statutory preferences before the notices of intent to award were issued. Appellees could not have known the Commissioner would ignore the required statutory preferences until after the notices of intent to award were issued, particularly when the RFP—as the Commissioner agrees—indicated that HHSC would follow these statutes. (*See* HHSC Resp. at 26.)

Contrary to the Commissioner's argument, *Wilson*, is on point. The court in no way limited its ruling to the fact that the petitioner there was an entity qualifying

for the mandatory contract award under section 533.004(a). *See* 607 S.W.3d at 854 (by alleging that the Commissioner refused to award a contract in accordance with section 533.004(a), petitioner alleged an ultra vires act). In any case, the trial court's findings here that the Commissioner has acted and will act ultra vires under sections 533.003(a)(1) and 536.052(d), which require preferences for certain plans based on their provider networks and quality metrics, are well-supported by the evidence. The Commissioner failed to even train or instruct the evaluators about the existence or application of the mandatory preferences. (5RR:88–89.) The evaluators' ignorance of the preferences is borne out by the results, as the record shows that the proposed contract awards would eliminate the highest-ranked plan—including Superior in certain service areas—in 11 out of 13 regions, and that the awarded plans lack participation from providers who have historically served Medicaid or charity care populations. (7RR:104–12.) The Commissioner thus fails to show any basis to reject the trial court's findings that Appellees have a probable right to relief on these ultra vires claims.

The Commissioner next contends that section 2155.144's general requirement to use a procurement method providing best value to the agency somehow trumps any statutory preferences that the Commissioner deems in conflict with that directive. (HHSC Resp. at 27–28.) There is no conflict, and this Court should be

wary of finding conflict, particularly where the statutes can easily be harmonized. *See, e.g.*, *Duarte v. Disanti*, 292 S.W.3d 733, 735 (Tex. App.—Dallas 2009, no pet.) ("Finally, we do not give a statute meaning that conflicts with other provisions if we can reasonably harmonize the provisions."); *Sw. Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 585 (Tex. App.—Austin 2000, pet. denied) ("Indeed when there is a positive and clear inconsistency between two statutes, courts must adopt a reading that harmonizes the statutes if at all possible."). And even if the statutes were in conflict, the more specific statutes applicable to this managed care procurement (including sections 533.003, 533.004, and 536.052) prevail over the more general statute, section 2155.144. *See* Tex. Gov't Code § 311.026.

The court in *Wilson* rejected a similar argument about section 2155.144. There, the Commissioner pointed to section 2155.144(n) and likewise argued that "he could award the contracts to any entities that provided the best value and did not have a ministerial duty to award a contract" pursuant to the mandatory contract requirement in section 533.004(a). 607 S.W.3d at 853. The court disagreed, finding no conflict in requiring the Commissioner to adhere to both the "generally applicable best value requirements" in section 2155.144 and the requirement to award a contract in accordance with section 533.004(a), even over the Commissioner's

arguments that this did not achieve best value. *Id.* at 854; *see also id.* at 846–47 (acknowledging that the Commissioner "must comply with statutory requirements such as those found in chapter 2155 …, which addresses 'General Rules and Procedures' for purchasing" and, in addition, "must implement the Medicaid managed care program by contracting with MCOs in a manner consistent with chapter 533").

So too here. Although the Commissioner certainly must comply with the generally applicable requirements to employ a procurement method that will provide best value, that does not mean she can ignore the specific statutory preferences and requirements set out in sections 533.003, 533.004, and 536.052(d) in awarding managed care contracts. *See id.* at 854.[3]

The Commissioner then suggests she maintains discretion in applying the preferences, and states that the preferences only come into play when "two bidders offer the same value." (HHSC Resp. at 27.) But "preference" has a common meaning in no way limited to the circumstance where a tie must be broken. *See* Preference,

---

[3] The Commissioner's new argument that "best value" trumps all other considerations also runs counter to the Commissioner's intent to award a CHIP contract to every respondent in the procurement that claimed entitlement to a Medicaid mandatory contract under section 533.004, regardless of that respondent's score under the purported best value criteria, including the respondent that came in *last place* out of all 18 respondents. (6RR:59, 157.)

Merriam-Webster Online Dictionary ("the act of preferring; the state of being preferred"; "the act, fact, or principle of giving advantages to some over others"); Preferred, Merriam-Webster Online Dictionary ("liked better or best"). The Commissioner even agrees that the statutory term "preference" means choosing one respondent over another in another context in this same procurement. (5RR:118–19 (Kay Molina admitted that HHSC treated the preference purportedly found in Texas Health & Safety Code section 62.155(c) differently from the preferences in sections 533.003 and 536.052—meaning that, in the case of section 62.155(c)(1) only, HHSC used the preference to choose one type of respondent over another).)

The Commissioner next suggests that the onus was on Appellees to present information in their proposals so that HHSC could apply the preferences and Appellees failed to do so. (HHSC Resp. at 28.) But the statutes place the responsibility of effecting the preferences on the Commissioner and HHSC, not Appellees. TEX. GOV'T CODE § 533.003(a) ("In *awarding contracts to managed care organizations, the commission shall … .*" (emphasis added)); TEX. GOV'T CODE § 536.052(d) ("In *awarding contracts to managed care organizations* under [CHIP] and Medicaid, *the commission shall … give preference … .*" (emphasis added)). This argument is even more nonsensical because the Commissioner and HHSC already have access to information they would need to apply the preferences (such as quality metrics and

information regarding provider networks) yet chose to ignore that information. (6RR:162–64; 5RR:162.) In sum, the statutory preferences apply, and their application is not discretionary.

> **(b)** **Appellees have a probable right to relief on their claims that the Commissioner has failed to apply or will fail to apply statutory preferences.**

The Commissioner argues that she acted within her discretion in applying the preference contained in section 533.003(a)(1). (HHSC Resp. at 28–30.) The Commissioner again suggests that she would use her discretion to apply a preference only where a tie existed between proposals. (*Id.* at 29.) But that conflicts with the statute's plain language.

Section 533.003(a)(1) is clear: "In awarding contracts to managed care organizations, the commission shall … give preference to organizations that have significant participation" by providers in the region who have traditionally provided care to Medicaid and charity care patients. TEX. GOV'T CODE § 533.002(a)(1). "Shall" is mandatory. *See, e.g.*, *Frank*, 255 S.W.3d at 324. And as discussed above, the word "preference" has a common and ordinary meaning: choosing one thing over another. Nothing supports the Commissioner's argument that she had the discretion to apply the preference only when she wished to do so, *e.g.*, in case of a tie or all things otherwise being equal. Arguing that there is some discretion in determining

what "significant participation" means or who qualifies as a provider who has "traditionally provided care to Medicaid and charity care patients" does not absolve the Commissioner's disregard of the statutory preference requirement.

Furthermore, the Commissioner cannot rely on the cited best value evaluation criteria or technical questions to contend that HHSC somehow did account for section 533.003(a)(1) in the procurement. Section 533.003(a)(1) requires HHSC, in awarding contracts to MCOs, to give preference by region to those MCOs that *have* significant participation in the MCO's provider network from each health care provider in the region that has traditionally provided care to Medicaid and charity care patients. Thus, section 533.003(a)(1) mandates that HHSC give preference based on provider networks *already in place* in each region when HHSC makes contract awards. None of the RFP's best value evaluation criteria or technical questions requested information regarding a respondent's existing provider network at all, let alone by region. And even the provisions the Commissioner cites do not relate expressly to providers who traditionally provide care to Medicaid and charity care patients, but "Providers" writ more broadly. (*See* HHSC Resp. at 30.) Nor were the evaluators given any information necessary to apply the preference, such as which providers traditionally provide care to Medicaid and charity patients, let alone even informed of a preference requirement. (5RR:98.)

The Commissioner says HHSC had substantial discretion in applying section 536.052(d) and applied the preference through some of the best value criteria and technical questions. (HHSC Resp. at 31–32.) Section 536.052(d) is again clear and mandatory: "In awarding contracts to managed care organizations under the child health plan program and Medicaid, *the commission shall … give preference to an organization* that offers a managed care plan that successfully implements quality initiatives" or "meets quality of care and cost-efficiency benchmarks" as specified under the statute. Tex. Gov't Code § 536.052(d) (emphasis added).

The Commissioner admits that no benchmarks were developed and confirms that she was proceeding under the subsection requiring consideration of which MCO "offers a managed care plan that successfully implements quality initiatives … as determined by the commission based on data or other evidence provided by the organization." (HHSC Resp. at 31.) But she readily admitted in public testimony before the House Human Services Committee that existing quality metrics were not considered in making the contract awards. (6RR:162–64; 5RR:162 & Ex. P-148 at 64–65.) HHSC merely considered what the respondents promised to do in the future. (*Id*.) That plainly does not comply with the statute. Nor is it sufficient to argue that respondents should have submitted and did not submit the relevant information for

the preference's application; the statute assigns the responsibility to HHSC to grant the preference. Tex. Gov't Code § 536.052(d).

The Commissioner suggests that HHSC considered the information necessary to employ the preference by considering responses to Technical Question 13, which asked bidders to "[d]escribe the Respondent's Quality Improvement and performance evaluation strategies and initiatives specific to the STAR, CHIP, and HTW populations." (9RR:330.) This question was forward-looking, seeking "strategies and initiatives" that will be employed under the STAR & CHIP contracts awarded under the RFP, not quality initiatives that any MCO is now implementing. Indeed, Ramirez confirmed that the procurement process did not consider or evaluate the quality initiatives previously implemented by any plan. (5RR:224–28.)

The Commissioner next disputes that she failed to ensure mandatory contracts under section 533.004 were awarded considering section 533.003(a)(1), which requires giving preference to organizations with significant participation in their provider network from health care providers in the region who have traditionally provided Medicaid and charity care. (HHSC Resp. at 33–34.) As explained above, the Commissioner did not actually employ the preference required by section 533.003(a)(1), and thus her argument that the selection of mandatory contracts was also under that provision falls flat. Indeed, the record evidence shows that the only

consideration in awarding a mandatory contract under section 533.004(a) was whether HHSC validated a claim of entitlement to such mandatory contract. (6RR:59, 157.) And contrary to what the Commissioner says, it is a question of the Commissioner's authority to choose a winner, and not a question of what "weight HHSC gave various factors." (HHSC Resp. at 33.) The statutes that Appellees have identified outline clear, nondiscretionary duties that must be performed by the Commissioner when awarding managed care contracts. She has failed to, and will fail to adhere to, these statutes in implementing the proposed contract awards. Appellees have stated claims for ultra vires conduct.

### (3) Appellees have a probable right to relief on their claims that HHSC wrongfully disclosed proposals.

HHSC's wrongful disclosure of the proposals, including to Aetna's legal counsel, destroyed the procurement's integrity and created an unlevel playing field resulting in intended contract awards procured through a process that does not provide fair consideration of proposals as required by 1 T.A.C. section 391.209(3)(A), and that is inconsistent, uniform, and transparent, as required by 1 T.A.C. section 391.101. The Commissioner responds that all respondents to the RFP agreed to the application of the Public Information Act ("PIA") to their proposals, and that if

HHSC mistakenly responded to a PIA request, that is simply a discretionary application of the PIA. (HHSC Resp. at 36–37.)

No one disputes that respondents knew that PIA versions of their proposals were eventually subject to public disclosure. But it is the manner in which HHSC made the disclosure that created an unlevel playing field and favored one bidder over others. (5RR:128–29 (Kay Molina agreed to the general idea of why proposals are protected until award decision is made—to protect the procurement's integrity—and admitted that she knew of no other instance where a proposal was released before notices of intent to award were posted); 5RR:136–40 (acknowledging the value of the prematurely-disclosed proposals to Aetna).) The Deputy Commissioner's conclusory resolution of Superior's protest (that, in HHSC's view, the premature disclosure did not affect the procurement) is contradicted by the record evidence, including HHSC's own admission that the disclosure was wrongful. (5RR:138–39 (discussing correspondence in which HHSC employees admitted the proposals were disclosed in error and asked the recipient to destroy the copies); CR:3546–47, 3588–3639; *see also* 6RR:16–17 (testimony of Superior's procurement expert).)

In short, the Commissioner fails to show any basis to reject the trial court's finding that Appellees have a probable right to relief on their claim that the Commissioner acted ultra vires in the premature disclosure of the proposals while the

procurement was pending and will continue to act ultra vires if she awards and executes the contracts knowing of the wrongful proposal disclosure.

> **(4)** **The trial court appropriately found that Appellees have a probable right to relief on their claims that the Commissioner will act ultra vires in failing to certify the proposals in accordance with section 533.0035 and in awarding "mandatory" CHIP contracts in violation of section 536.052(d).**

The Commissioner next argues that the trial court "invented" statutory mandates in support of the temporary injunction. (HHSC Resp. at 38–41.) But after a three and a half day evidentiary hearing, the trial court simply applied the plain language of the relevant laws to the facts and found that Appellees have a probable right to relief on their claims sufficient to warrant entry of a temporary injunction.

Texas Government Code section 533.0035(a) is one such clear, nondiscretionary statute: "Before the commission may award a contract under this chapter to a managed care organization, *the commission shall evaluate and certify that the organization is reasonably able to fulfill the terms of the contract*, including all requirements of applicable federal and state law." TEX. GOV'T CODE § 533.0035(a) (emphasis added). While the Commissioner contends that this statute requires no investigation by HHSC, and that HHSC may simply rely on what is presented by the respondents, the word "evaluate" in the statute plainly requires more than the self-certification that HHSC allowed.

The Commissioner also argues that there is no statutory basis to prohibit the procurement of CHIP and STAR services together. (HHSC Resp. at 40–41.) But that misconstrues Appellees' argument. No one is arguing that CHIP and STAR (*i.e.*, Medicaid) services may not be procured through the same RFP. But what the statutes do prohibit is any mandatory CHIP contract award under section 533.004 (which expressly applies only to Medicaid managed care services and not CHIP and is an exception to competitive procurement, see *Wilson*, 607 S.W.3d at 854) where Texas Health & Safety Code section 62.155(a) mandates competitive procurement for CHIP contracts. Section 62.155(c)(1)'s statement that the Commissioner "*may give preference to a person who provides similar coverage under the Medicaid program*," Tex. Health & Safety Code § 62.155(c)(1) (emphasis added), does not mean that the Commissioner can simply ignore the requirement to competitively procure CHIP contracts in subsection (a).

The Commissioner boldly contends that "HHSC's decision to procure the CHIP piece with the mandatory STAR piece is consistent with the *best-value scoring to award the CHIP contracts competitively*" (HHSC Resp. at 40–41), but this is demonstrably untrue. The mandatory contracts were not awarded based on any "best-value scoring." They were automatically given without regard to the score under the best

value criteria. That is how you end up with the *lowest-scoring of all 18 respondents receiving a mandatory contract* for both STAR and CHIP services. (6RR:59, 157.)

The trial court therefore correctly concluded that Superior and the other Appellees have established a probable right to relief on the merits of their claims. None of the Commissioner's arguments about the purported merits of the claims warrant denying Rule 29.3 relief.

**3.     The equities weigh heavily in favor of temporary relief.**

To argue that the equities weigh against temporary relief, the Commissioner argues that the State's interest in enforcing its laws is the paramount concern. (HHSC Resp. at 43.) But the case the Commissioner relies on is not applicable, and the Commissioner's argument ignores the fundamental purpose of ultra vires suits. In *State v. City of San Marcos*, the State sued to enjoin a city ordinance that allegedly violated state law. 714 S.W.3d 224, 231 (Tex. App.—15th Dist. 2025, pet. filed). This Court found that the State had a likelihood of success on the merits of its claim that state law preempted the ordinance. *Id.* at 243. Then, in analyzing the factors governing temporary relief, the Court found that the equities weighed in favor of enjoining the ordinance because of the State's interest in enforcing its laws. *Id.* at 245.

Here, the circumstances are reversed. The trial court correctly found that there is a likelihood that Appellees will succeed on their claim that the Commissioner's actions and proposed actions are ultra vires. *See* Part 2.D. Thus, in contrast to *San Marcos*, the likelihood here is that the State will lose. Additionally, the State has no interest in continuing ultra vires conduct. In fact, as discussed above, an ultra vires suit's purpose is to "to reassert the control of the state" over an official who is acting contrary to law. *Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 164. The Commissioner's ultra vires acts are by definition *not* the sovereign's acts. *Id.* The Commissioner's protest that the courts have "interfered" with the procurement ignores the trial court's findings that the procurement violated multiple state laws and that executing the planned contracts would also violate the law. Any disruption in the process therefore results from the Commissioner's ultra vires conduct, not Appellees' suit or the injunctive relief. The Commissioner has no right to violate the law. *See In re State*, 711 S.W.3d 641, 648 (Tex. 2024) (orig. proceeding) ("The County is not harmed by being required to follow the Texas Constitution."). Thus, the State's asserted interest in enforcing the law would be served by the temporary relief Appellees seek.

The Commissioner also misconstrues Appellees' interests. Appellees do not assert a right to a contract with the State. Instead, they have asserted a right to a

procurement process that follows the law. Appellees have a right to a process that complies with the legislature's mandates including giving the required preferences. And they have a right to a fair process not tainted by improper disclosure of their bids to competitors during the process. *See* Part 2.D. If Appellees are correct that the proposed contract awards and the Commissioner's future actions if she finalizes those contract awards are ultra vires, then their existing contracts should not be replaced by unlawfully awarded contracts. The harms Appellees face (*see* Part 2.A.) would result from that improper replacement. For the reasons discussed in Part 2.A., the Commissioner's arguments that Appellees do not face imminent, irreparable harm cannot succeed. As a direct result of the Commissioner's ultra vires acts, Superior faces serious irreparable harm if the Commissioner executes unlawfully awarded contracts. *See* Part 2.A.

Similarly, the Commissioner attempts to brush aside the significant harms to the public the trial court found. (HHSC Resp. at 48–50.) Millions of Texans will be required to find new health plans if the proposed contracts are executed. (Superior Mot. at 22.) And that disruption will be the result of an unlawful process. The Commissioner's claimed interest in "efficient provision of Medicaid services" cannot excuse the many ways that the procurement violates Texas law. The Commissioner's public-interest arguments are also premised on her repeated (and mistaken)

assertion that she has essentially unfettered discretion to determine which health plans best serve the public interest regardless of whether she does so in flagrant disregard of the law. (HHSC Resp. at 43.) As discussed in Part 2.D., that discretion is limited by multiple state laws, and the trial court correctly found that the procurement likely violated those laws. Thus, the Commissioner's argument that her interest in proceeding with the contract awards *is* in the public interest is simply incorrect.

Finally, the Commissioner is wrong about what preserving the status quo means here. As discussed in Superior's motion, the status quo is that the intended contracts have not yet been signed. The Commissioner makes no effort to address the cases Superior cited in its motion about the proper understanding of the status quo. (Superior Mot. at 31–32.) "Where an order is entered by a Board or Commission of this State in opposition to the objections and contentions of a party whose justiciable interests are adversely affected thereby, the 'status quo' would be the state of affairs as they existed immediately prior to the time the order was entered." *Tex. State Bd. of Exam'rs in Optometry v. Lane*, 349 S.W.2d 763, 765 (Tex. App.—Fort Worth 1961, no writ) (citing *Transp. Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549 (Tex. 1953)). And in *Texas Health & Human Services Commission v. Sacred Oak Medical Center, LLC*, the court recognized that the status quo was the state

of affairs before the agency issued its order refusing to renew the plaintiff's license and that the proper temporary relief was an order reinstating the license pending the appeal's resolution. No. 03-21-00136-CV, 2021 WL 2371356, at *7 (Tex. App.—Austin June 9, 2021). Preserving the status quo here requires enjoining the Commissioner from executing the intended contracts. The Commissioner herself recognized that by repeatedly extending the existing contracts during the multiple (ultimately abandoned) prior procurement processes and by agreeing to keep the trial court's injunction in place while this Court considers the Appellees' motions for temporary relief from this Court. The Court should grant the requested relief and keep that status quo in place while it considers the merits of the Commissioner's appeal.

## Conclusion and Prayer

The trial court correctly found that the Commissioner has acted ultra vires and will act ultra vires if she executes the contracts announced in the intent to award. This Court should therefore grant temporary relief to continue the injunctive relief awarded by the trial court to preserve this Court's jurisdiction to hear this case on the merits. Failure to do so will irreparably harm Appellees and the public and may impact this Court's ability to grant effective judicial review. Superior further requests general relief.

Dated: September 24, 2025

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Richard B. Phillips, Jr.*

Richard B. Phillips, Jr.
Texas Bar No. 24032833
rich.phillips@hklaw.com

One Arts Plaza
1722 Routh Street, Suite 15500
Dallas, Texas 75201
(214) 964-9500 (telephone)
(214) 964-9501 (facsimile)

Karen D. Walker
*Admitted Pro Hac Vice*
karen.walker@hklaw.com
Tiffany Roddenberry
*Admitted Pro Hac Vice*
tiffany.roddenberry@hklaw.com

315 S. Calhoun Street, Suite 600
Tallahassee, Florida 32301
(850) 425-5612 (telephone)
(850) 224-8832 (facsimile)

**ATTORNEYS FOR APPELLEE SUPERIOR HEALTHPLAN, INC.**

## CERTIFICATE OF COMPLIANCE

I certify that this reply contains 9,972 words, excluding the portions of the Motion exempted by Rule 9.4(i)(1).

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 106038754
Filing Code Description: Other Document
Filing Description: Superior HealthPlan Inc.'s Reply in Support of Motion for Temporary Relief
Status as of 9/24/2025 4:32 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michaelle Peters | | mpeters@scottdoug.com | 9/24/2025 3:52:39 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 9/24/2025 3:52:39 PM | SENT |
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 9/24/2025 3:52:39 PM | SENT |
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Robert Johnson | 10786400 | rjohnson@foley.com | 9/24/2025 3:52:39 PM | SENT |
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 9/24/2025 3:52:39 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 9/24/2025 3:52:39 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 9/24/2025 3:52:39 PM | SENT |
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 9/24/2025 3:52:39 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 9/24/2025 3:52:39 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 9/24/2025 3:52:39 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| Cory Scanlon | 24104599 | cory.scanlon@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 9/24/2025 3:52:39 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 9/24/2025 3:52:39 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 9/24/2025 3:52:39 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Phillips on behalf of Richard Phillips Jr.
Bar No. 24032833
Rich.Phillips@hklaw.com
Envelope ID: 106038754
Filing Code Description: Other Document
Filing Description: Superior HealthPlan Inc.'s Reply in Support of Motion for Temporary Relief
Status as of 9/24/2025 4:32 PM CST

Case Contacts

| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
|---|---|---|---|---|
| Kayla Ahmed | | kayla.ahmed@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 9/24/2025 3:52:39 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 9/24/2025 3:52:39 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 9/24/2025 3:52:39 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 9/24/2025 3:52:39 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| David Johns | | david@cobbjohns.com | 9/24/2025 3:52:39 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 9/24/2025 3:52:39 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 9/24/2025 3:52:39 PM | ERROR |
| Trisha Marino | | tmarino@perkinscoie.com | 9/24/2025 3:52:39 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 9/24/2025 3:52:39 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 9/24/2025 3:52:39 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 9/24/2025 3:52:39 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 9/24/2025 3:52:39 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 9/24/2025 3:52:39 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 9/24/2025 3:52:39 PM | SENT |
| Jeffrey Stephens | | jeff.stephens@oag.texas.gov | 9/24/2025 3:52:39 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 9/24/2025 3:52:39 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 9/24/2025 3:52:39 PM | SENT |